## Henry Mason v. The State.

*No. 15.   Decided November 30.*

1. **Forgery — Evidence — Systematic Crimes.**—Where independent criminal acts are connected as part of a systematic plan, evidence of any of them is legitimate to show guilty knowledge, and the time when the collateral inculpatory acts occurred is immaterial, provided they are close enough together to indicate that they are a part of a system. See this rule applied to a case of forgery by means of raised checks uttered and passed by the same parties at two different times and at two different places.

2. **Principal Offenders—Conspiracy—Joint Liability.**—Persons acting together in the commission of an offense, although all may not be actually present at the commission of the offense, are principals; and where it is established that persons charged are in the pursuit of the same object or purpose, one performing one part and another some other part, with a view to the attainment of the same object, the conclusion is justifiable that they are engaged in a conspiracy to effect that object; and under our statute such acting together would make all principal offenders, whether bodily present or not at the place of the offense.

3. **Same — Consummation of Conspiracy Complete, when.**—All persons acting together in the commission of an offense are principals so long

as any portion of the object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated and accomplished.

4. **Same—Charge of Court.**—Where on a trial on a charge of uttering a forged draft the court instructed the jury, that if the defendant, in furtherance of the common design, forged the instrument and delivered it to a confederate, to be passed by him, with intent to defraud, then defendant and his confederate would be guilty of acting together in passing the forged instrument, and defendant would be a principal in the commission of that crime by his confederate, *held*, that the charge was correct.

APPEAL from the District Court of De Witt. Tried below before Hon. H. CLAY PLEASANTS.

The indictment in this case charged Samuel Harris, alias Edward Holmes, alias Thomas Hunter, and this appellant, Henry Mason, alias James Smith, jointly with uttering as true a forged instrument, in words and figures as follows, viz.:

"$2000.                                                No. 3906.

"GALVESTON, TEXAS, Jan. 9, 1892.

"Pay to the order of Samuel Harris $2000—Two Thousand and no-100 Dollars.

"W. L. MOODY & Co.

"To Messrs. Otto Buchel & Co., Cuero, Texas."

When the case was called for trial a severance was granted by the court, at the instance of defendants, and appellant Henry Mason was alone placed upon trial. The trial resulted in his conviction, the punishment being assessed at three years confinement in the penitentiary.

The testimony shows that a check for $20 was, on January 4, 1892, drawn by W. L. Moody & Co., at Galveston, on the bank of Otto Buchel & Co., at Cuero, in favor of one Samuel Harris. That on January 14, 1892, Samuel Harris cashed, at the bank of Otto Buchel & Co., at Cuero, a check for $2000, which purported to have been drawn by W. L. Moody & Co. in favor of Harris. It was proven that this pretended check for $2000 was the same check which Moody & Co. had drawn for $20, and that it had been most ingeniously altered both in the punched figures and in the writing in the body of the instrument, from twenty to two thousand. This check was cashed by the cashier of Buchel's bank about 11 o clock a. m. on the 14th of January, 1892.

L. R. Bergeron testified: That on January 4, 1892, he was the cashier of the Galveston National Bank, at Galveston, and that on that day he drew a draft in favor of Edward Holmes for $20 on the First National Bank of Cuero; and that on the 9th of January he drew another draft for $25 in favor of Thomas Hunter on G. N. Dilworth, a banker of Gonzales, Texas.

It was proven, that on the 14th of January, 1892, a man who claimed that his name was Edward Holmes, or who called himself Edward Holmes, at 12 minutes to 12 o'clock presented for payment at the First National Bank of Cuero a check for $2000, purporting to have been drawn on said bank by L. R. Bergeron, assistant cashier of the Galveston National Bank. He failed, however, to get this check cashed.

On the 15th day of January, as testified by the cashier of G. N. Dilworth's bank at Gonzales, a check was presented at his bank for payment for the sum of $2500, payable to Thomas Hunter, and drawn by the National Bank of Galveston. He further testified, that the Galveston bank had drawn on them for $25, and had notified them of that fact, and that the number on the check for $25 was the same number as that on the $2500 draft presented by Hunter. He did not pay this $2500 draft.

It was proved that Hunter, Holmes, and Harris were all one and the same man, and he was identified by several parties. It was proved that this appellant, Mason, was seen with Hunter, or Harris, at Cuero, on the day that he had the $2000 Moody check cashed. That they left Cuero together; that they were seen together at Gonzales on the 15th. That after failing to get the draft cashed by Dilworth, they immediately left Gonzales for Harwood, in a buggy, at which place they were arrested together as they were about to take the west bound train. After they were arrested, defendant destroyed some papers by burning them in the stove at the depot, which papers looked like checks.

Nicholson, the city marshal of Gonzales, testified: That after the parties had been brought back to Gonzales, under arrest, and turned over to him, he searched them; that they had $2900 on them. Defendant had $2770, and the other man $130. The cashier of the bank of Buchel & Co., of Cuero, identified two of the bills taken from the defendant as part of the money he had paid to the man calling himself Harris, on the check of Moody & Co. There were other facts testified to tending to show that the parties were confederates, acting together during the transactions above set out.

*Fly & McNeal*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, Judge. — Appellant was convicted of uttering a forged draft for $2000, on the bank of Otto Buchel & Co., of Cuero, purporting to be drawn by W. L. Moody & Co., of Galveston, and was sentenced to three years in the penitentiary, from which judgment he appeals. There are three questions of error that will be considered.

1. Appellant complains that the court erred in allowing evidence to be introduced of what transpired at Gonzales the day after the uttering of

the forged draft in Cuero, for which appellant was being tried. The evidence shows clearly that defendant and one Harris were engaged in the common purpose of raiding the banks by forged drafts in Cuero and Gonzales, and in all probability other towns in Southwest Texas. They had succeeded in passing a forged check for $2000 on one bank in Cuero, but failed in an attempt to pass one for the same amount on the other bank in that town. They then took the train for Gonzales, and there attempting to pass a forged check for $2500, failed, and were arrested. The defendant, Mason, being placed on trial, objected to proof of the acts of his confederate and himself in Gonzales to establish his complicity in uttering the forged check on Otto Buchel's bank, in Cuero, upon the ground that the transaction was closed when they left the town of Cuero, and the attempt to utter a forged check in Gonzales was a new and independent crime, done subsequent to the Cuero uttering, and not admissible to show guilty knowledge and complicity.

It is a well settled rule, that where there are disconnected, independent felonies, you can not give evidence of one to prove defendant's guilt in another, even though they be of the same character of offenses. Nixon's case, *ante,* p. 205. Indeed, it would be a violation of a fundamental principle of our law. But there is an exception, as well established as the rule itself, that where the criminal acts are connected as part of a systematic plan, evidence of any of them is legitimate to show guilty knowledge, and the time when the collateral inculpatory acts occurred is immaterial, provided they are close enough to indicate they are part of a system. Whart. Crim. Ev., 38.

In Rex v. Whiley, 2 Leach, 983, Lord Ellenborough cited a case where a man committed three burglaries in one night, taking a shirt at one place, and leaving it at another. It was held they were all connected, and all admissible evidence on the trial of one. So when four station houses were broken open one night, along the railroad, the court held that the offenses were all so connected that evidence was admissible of what was done at each, on the trial of one. 3 Russ. Crimes, 283. Mr. Russell also cites the case of Rex v. Smith, 4 Car. & P., 411, where the court held that an uttering five weeks after the first was admissible if the latter uttering was in some way connected with the first. 2 Russ. Crimes, 837. This principle is well recognized by this court (Hennessy v. The State, 23 Texas Court of Appeals, 354), and when the system is shown it is admissible to prove any acts before or after the one charged. The evidence clearly shows a connection between the uttering in Cuero and the acts of the parties on the attempted uttering in Gonzales, with the attendant circumstances of the arrest and recovery of the money; and that defendant and Harris were engaged in a scheme to swindle the banks by means of forged drafts; and the court did not err in admitting the testimony.

2. Defendant further complains, that if guilty at all, he is but an accomplice, and not a principal, and the court erred in not properly charging on principal and accomplice. We think the charge is sufficient, and the question was fairly submitted to the jury, whether defendant was a principal or accomplice, and follows the law laid down in Watson's case, 21 Texas Court of Appeals, 598; Smith's case, 21 Texas Court of Appeals, 108; and Collins' case, 24 Texas Court of Appeals, 152.

It is true the codefendant, Harris, in each instance passed, or attempted to pass, the forged checks alone, but the evidence clearly shows they were carrying on their operations together. The plan was the same. Small inland drafts were purchased in Galveston on interior banks, and the checks raised from $20 to $2000, and from $25 to $2500. A few days after the purchase of these checks, defendant and his confederate, Harris, arrived on the Houston train at 3 o'clock in Cuero. They put up at the same hotel. One registered for both. They occupied the same room, and their only baggage was a small valise, and one paid for both. They were together in the evening, and were shaved together, and slept together, and next morning were seen together on the streets. At 11 o'clock Harris went to Otto Buchel's bank, and after some trouble succeeded in getting the check cashed. Shortly after, Harris met defendant on another street near a cistern, and delivered him a package, and received some papers that looked like checks. Harris then went to the other bank, but failed to pass a forged check there, owing to the caution of the president. While Harris was attempting to pass the check in the National Bank, defendant was standing over a block away, intently watching for him. They left the town together, and reached Gonzales. In Gonzales the same tactics were followed, and when Harris failed to pass the check he went and met defendant, who was awaiting him near the bank, and they were in conversation when interrupted by the banker, and they left the town, and hired a team, and went to Harwood, where they were arrested on telegram. On being arrested and confined to the depot by the conductor, defendant opened the gripsack, took out a number of papers, and thrust them into the stove, and consumed them. The only baggage was the little gripsack. Then they disposed of everything about their persons, and nothing was found on either of them except the money.

When subsequently delivered to the officers and searched, they found $2770 on defendant, and only $130 on Harris, and defendant had the grip. The cashier of Otto Buchel identified the money generally by the way it was put up, by the denominations of the bills, and by two bills which were observed by him when he paid out the $2000, which he said were unlike any bills he had met with before. We think the evidence unquestionably presents a case of persons acting together in the commission of an offense. This court has held that persons acting together in the commission of an offense, although all may not be actually present

when the offense was committed, are principals.  Willson's Crim. Stats., sec. 142; Collins v. The State, 24 Texas Ct. App., 141; McFadden v. The State, 28 Texas Ct. App., 241.  In Watson's case, two were to steal the hogs, and defendant was to get everything ready for slaughtering and packing them.  He was held to be a principal in the theft.  21 Texas Ct. App., 606.

Again, it is well settled that where it is proved that the persons charged by their act pursue the same object or purpose, one performing one part and another some other part of the same, so as to complete it with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object; and under our statute such acting together would make all principal offenders, whether bodily present or not at the place of the offense.  And they are all principal offenders when acting and together, as long as any portion of the object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated and accomplished.  Smith's case, 21 Texas Ct. App., 108; Willey v. The State, 22 Texas Ct. App., 408; Miller v. The State, 23 Texas Ct. App., 38; Collins v. The State, 24 Texas Ct. App., 141; McFadden v. The State, 28 Texas Ct. App., 241.

So in other States, one waiting on the outside, to carry away the goods when stolen by his confederate on the inside, of the store, was held to be a principal.  Norton's case, 8 Cow., 137; The State v. Wisdom, 8 Port., (Ala.) 511; The State v. Putman, 18 S. C., 175.  The doctrine may thus be stated:  That where several persons set out together or in small parties upon one common design, be it murder or other felony, and each takes a part assigned him, some to commit the act, others to watch or aid the escape, or to help carry away the proceeds, they are all principals. Whether the jury believed the object of defendant in being constantly on the watch while the forged checks were being passed was to receive the plunder and secure it in case his confederate was overtaken, or remained near by to advise in case difficulties were raised at the banks about payment, or for both purposes, they evidently thought he was a principal, and there is ample evidence to sustain the finding.

3.  We think there was evidence to justify the charge of the court, that if the jury believed the defendant, Mason, in furtherance of the common design, forged the check and delivered it to Harris, to be passed by him on Buchel & Co., with intent to defraud, then defendant and the said Harris would be guilty of acting together in passing the check, and the defendant, Mason, would be a principal in the commission of the crime.

After a careful examination of the facts in this case, under the authorities, we find no error, and it is affirmed.

*Affirmed.*

Judges all present and concurring.