## C. A. DAWSON v. THE STATE.

### No. 1167. Decided June 16, 1897.

**1. Principals in Crime—What Constitutes.**

In order to constitute a person a principal in crime, where he was not personally present at the place of its commission, it is essential that he must, at the time the act is being done, be then doing some act in furtherance of the common design.

**2. Arson—Accomplice.**

On a trial for arson, upon a count in the indictment which charged defendant as a principal, where it appeared from the evidence that defendant had simply agreed with the principal offender to the commission of the crime, but was not present at the time of its commission, nor then keeping watch nor procuring aid or means to assist in its execution, nor engaged in securing the safety or concealment of the offender; and the principal offender was not an innocent agent of defendant in the commission of the act. Held, these facts constituted defendant, under our statutes, an accomplice and not a principal. Penal Code, arts. 74, 78, 79.

**3. Principal and Accomplice—Allegation and Proof.**

A party indicted as a principal can not be convicted upon evidence showing him to be an accomplice, and vice versa.

**4. Same—Evidence—Undelivered Letter of a Co-Conspirator.**

On a trial for arson, a letter written after the arson, by a co-conspirator to the defendant, and inclosed in an envelope addressed to a third party, but which was never delivered to or received by defendant, and the contents of which were unknown to defendant until after his arrest, was clearly inadmissible as evidence against him.

**5. Same—Evidence—Acts and Declarations of Defendant.**

On a trial for arson, for the burning of the ginhouse of C. & S., a partnership doing business in said house, where it appeared that defendant was agent in purchasing cotton for the firm of W. & Co., to be ginned at said gin, the statements of defendant to W. & Co., as to the business, were admissible in evidence; and were also the statements of C. & S., after the fire, for the benefit of W. & Co., which statements had been delivered by them to defendant and by him delivered to W. & Co.

**6. Same—Books and Original Entries as Evidence.**

On a trial for the burning of the ginhouse of C. & S., where it appeared that defendant, as the agent of W. & Co., had purchased a large quantity of cotton to be ginned at said gin, Held, the books of C. & S., showing the original entries, were admissible in evidence against defendant as tending to show a conspiracy on the part of C. & S. and defendant to defraud W. & Co.

**7. Same—Evidence—Undelivered and Returned Letters.**

The fact that certain named parties did not live in a certain community, can not be proved by testimony to the effect that letters, which had been written to them, addressed to the postoffice in their neighborhood, were undelivered and had been returned to the writers thereof.

**8. Evidence that Parties Named Are Fictitious Persons.**

Persons living in a community, and well acquainted with the inhabitants, can testify that certain named persons did not live in said community, such evidence being admissible as tending to show that they were fictitious persons.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

Apppeal from a conviction for arson; penalty, five years imprisonment in the penitentiary.

The following concise statement, taken from the brief of appellant, is substantially correct:

The ginhouse was the property of Bledsoe, as charged, but was operated by and in the possession of Clark & Saucer, who fraudulently burned the same, employing and using one Thomas to fire the house.

The defendant was a cotton buyer for White & Co.; the seed cotton bought by him was ginned by Clark & Saucer. The custom in Lancaster, and employed by the appellant, was to purchase seed cotton from farmers, send the load to the gin, where it was weighed, and scale ticket was issued by the ginner to the farmer for the net weight of the seed cotton, and on presentation of the scale ticket the cotton so purchased was paid for. Coolidge & Bro. acted as bankers for White & Co. and paid all scale tickets issued by Clark & Saucer to account of White & Co., upon the faith of such tickets for cotton alleged to have been purchased, and with few exceptions, without the O. K. of appellant upon such ticket. It may be conceded from the record that fraudulent or bogus tickets were issued by Clark & Saucer to account of White & Co., and by them cashed with Coolidge .Bro., and that they appropriated at least seven bales of cotton belonging to White & Co., and that the gin was burned to conceal the fraud by them perpetrated.

The complicity of the appellant in the offense charged is predicated upon the testimony of Saucer, who turned State's evidence, who testified that appellant was a party to the fraudulent scheme to plunder White & Co., and shared with Clark & Saucer in the proceeds, and agreed to the conspiracy formulated, planned, and directed by Clark to burn the gin. He testified: "The defendant was not present with Thomas and myself (Saucer) when we were examining the gin on the night of the fire and fixing the torch; no one was present except Thomas and myself (Saucer). Dawson was at the hotel in his room until after the alarm of fire was raised by H. H. England. His (Dawson's) part in burning the gin was in agreeing to it and advising it." There was no other testimony as to any participation by the appellant in the alleged arson.

Over objection of defendant, the court permitted the State to introduce in evidence a letter written by the co-conspirator Clark to defendant after the arson, and which had never been delivered or received by defendant. This letter is set out in the opinion.

The other matters complained of as error will be found discussed below in the brief of counsel for appellant and the State.

*Kearby & Muse* and *Green Williams,* for appellant.—The court erred, over appellant's objection, in permitting the State to introduce the scale book of Clark & Saucer and show therefrom the issuance of scale tickets to W. H. Cutter and J. A. Houston, and then to prove that said scale tickets were to fictitious parties, by introducing W. A. Cutter and J. W. Houston and proving that no such tickets were issued to them, and that they did not know, and never heard of, such parties.

The court erred, over the objection of the appellant, in permitting the State to prove the written statements of Clark & Saucer to White & Co. after the alleged arson, which statement purported to show the names

of parties to whom they had issued scale tickets for cotton for account of White & Co., and the amount to each.

And erred in the admission of letters written by White & Co. addressed to Lancaster, Texas, to a number of said parties whose names appeared on said written statement aforesaid of Clark & Saucer, and which letters were returned through the mail to White & Co. for nondelivery to the addressee, the purpose being to show by said fact that such addressees were fictitious persons and said scale tickets fraudulent and bogus.

And erred in permitting Boyd, the postmaster, to testify that said addressees did not live at Lancaster or in its vicinity, and that he had never heard of them. That no one had called for the letters, and he had returned them to Dallas in accordance with the return address.

The court erred over objection in permitting the bailiff for the grand jury to prove that the grand jury of Dallas County had placed in his hands attachments for some of the parties named in said statement of Clark & Saucer to White & Co.; that he had made diligent search and inquiry for them, and that no one knew or had ever heard of said parties, and was unable to find them.

And the court further erred in permitting Rafferty, bookkeeper for Coolidge, to prove, over objection, that Coolidge & Bro. had paid the scale tickets issued by Clark & Saucer, and that the names of John Snell and others appearing on the written statement of Clark & Saucer to White & Co., made after the fire, were not on the books of Coolidge & Bros., and that no money had been paid to such named parties as having sold cotton to account of White & Co.

The appellant duly reserved his exception to the admission of all said foregoing testimony, on the ground that it was not competent to prove by said letters and the testimony of the postmaster that the parties named were myths or fictitious persons. Nor was the testimony of Allen and the grand jury process competent evidence for such purpose, and was prejudicial to the defendant and calculated to mislead and confuse the jury. And that the written statement of Clark & Saucer to White & Co., made after the arson, was incompetent and inadmissible, because the declarations and statements of co-conspirators after the consummation of the conspiracy a completion of the crime.

The court erred in refusing a new trial, because the verdict was not supported by the evidence, for that there was no proof tending to support the issue that appellant was a principal in the arson alleged, and the evidence conclusively shows that the appellant was not guilty as a principal, but if at all, as an accomplice.

*Nat. P. Jackson* for *Mann Trice,* Assistant Attorney-General, for the State.—The indictment alleges the offense to have been committed on October 17, 1895. One Saucer, a codefendant, under seperate indictment, who had turned State's evidence, testified to facts inculpating the defendant in the offense. A letter claimed to have been written by one

Clark, another separately indicted codefendant, under an assumed name, corroborative, it is claimed, of the testimony of Saucer, and written, according to date and postmarks on envelope, more than a month after the consummation of the offense, and addressed inside to defendant, but on the outside of envelope to defendant, under a fictitious name, after proof of handwriting, etc., was admitted in evidence for the State over defendant's objection. Defendant was shown never to have received or seen that letter until at his examining trial. Several objections are urged in the brief, none of which are tenable, unless it be that the letter was not admissible, even under the exception to the rule excluding the acts and declarations of codefendants after the consummation of the offense. That exception is stated in Pierson's case, 18 Texas Criminal Appeals, 524, to be, that "while acts and declarations of a codefendant, subsequent to the commission of the offense, are not admissible unless acquiesced in by defendant, still, any fact or circumstance which would tend to prove the guilt of a codefendant, would also tend to prove the guilt of defendant, are admissible against defendant." The Pierson case was determined in a well considered opinion by this court, and announces this rule, under which, it is submitted, this evidence was properly admitted. The more formal objections to the introduction of said letter are not well taken.

The motive imputed to the burning was to destroy evidence of a systematic scheme of embezzlement pursued by defendant and three others in the purchase of cotton for White & Co., a cotton firm in Dallas; that scheme, involving the issue of bogus scale tickets, issued by the gin firm of Clark & Saucer, with the connivance of defendant, representing cotton purchased and to be represented as consumed with the gin—such scale tickets having been paid by White & Co.'s agents, but no such cotton having in fact been purchased or consumed. For the purpose of proving that motive, it was undeniably competent for the State to introduce the scale book of Clark & Saucer, to show the issuance of fraudulent and fictitious tickets; to prove by the agents of White & Co. the payment of the same for White & Co.'s account; to show no such persons as those to whom the scale tickets purported to have been issued lived in the community.

On the additional ground stated in the third paragraph of this brief, it was competent to admit the statement of Clark & Saucer to White & Co., showing a list of the bogus tickets issued by them; that, like the matter treated in the first paragraph hereof, would tend to convict the codefendants, and hence was admissible against this defendant.

Considered as a whole, the charge of the court covers every phase of the case presented by the evidence, and correctly submits the issues to the jury. Hence the requested charges, as far as correct, were properly refused.

The defendant was hardly, it appears to the writer, a principal under the proof. He was not present at the burning, but agreed to and advised it. That much is testified by the confessed confederate, Saucer,

but I fail to find corroborative proof. That testimony clearly shows that defendant was not present at the burning, and had no more to do with it than to advise and agree to it.

HENDERSON, JUDGE.—Appellant was convicted of arson, and his punishment assessed at a term of five years in the penitentiary; hence this appeal.

The indictment in this case contains six counts. The court in its charge eliminated all except the third count, and the jury convicted appellant under the third count. Said count charges that appellant "did on the 17th day of October, 1895, unlawfully and willfully set fire to and burn a house there situate," etc. This was a count against appellant as a principal. Other counts treat him as an accomplice. Appellant insists that the evidence in this case shows that, if he was guilty at all, he was not guilty as a principal, but as an accomplice, and he complains of the action of the court in refusing to give certain charges asked by him on that line, and also of the action of the court in refusing to grant him a new trial because there was no evidence to authorize his conviction under said third count. The charge in this case was arson. The burning was shown to have been of a ginhouse situate in Lancaster, Dallas County. The building was fired about 12 or 1 o'clock at night. All the proof shows that at the time said building was fired the defendant, Dawson, was at the hotel where he stopped, some four or five hundred yards from said building. The only witness who testifies as to the manner in which said building. was burned was one Saucer, an accomplice. He states, substantially, that one John Thomas set fire to and burned said building; that said Thomas lived at Sherman, and came to Lancaster that night for the purpose of burning said gin. We quote from his testimony as follows: "On the night of October 17th Clark told witness that John Thomas was at the corner of the hotel gallery, and to go down and see him. Witness went down, and there met John Thomas, and walked with him to the middle of a vacant lot; and John Thomas stated that he was ready to burn the gin, and Clark had told him that it must be burned that night, and wanted witness to go with him, and show him the gin and the lay of the land. Witness returned to the room, and asked Clark to go with Thomas, which Clark refused to do. Witness then returned to John Thomas, and went with him to the gin, took him through the gin, upstairs and downstairs, examined the premises and the roads on two sides of the gin, and the best way to get out after the gin should be burned; and John Thomas tied two wires of the fence together, so as to leave an opening so he could go through easily after he had burned the gin. He then went back to the ginhouse and arranged the torch to fire the gin, which was to be done about midnight; and witness left John Thomas sitting in the cellar of the ginhouse, and returned to his room at the hotel, where he found Price in bed, and Clark sitting up in the room. It was then after 11 o'clock at night. Clark asked witness why he did not stay with Thomas, and see that he burned the gin and did

everything right. Witness replied that he was not going to do it; if
Clark wanted Thomas to have any assistance, he could assist him himself.
Clark then stated that he would go and assist Thomas, and was gone
twenty or thirty minutes, and came back to the room and remarked,
'She's gone to hell,' pulled off his shoes and his coat, and got in bed;
that in a few minutes afterwards Mr. England knocked at the door of
their room and called Clark, and said, 'Your gin's on fire;' that they all
then got up and dressed (Clark, Price, and himself), and went down-
stairs and ran towards the gin. The defendant, Dawson, reached the
gin from the hotel after we had gotten down there. The defendant,
Dawson, did not know who was to burn the gin. He knew it was to be
done, and agreed to it. He was to take no part in the burning of it, but
had agreed to the burning, and had advised it. The gin was to be burned
by persons furnished by Clark, and Clark provided and made the ar-
rangements with John Thomas to burn it. The defendant was not pres-
ent with Thomas and myself when we were examining the gin on the
night of the fire, and fixing the torch. No one was present except
Thomas and myself. Dawson was at the hotel in his room until after the
alarm of fire was raised by H. H. England. His part in burning the gin
was in agreeing to it and advising it." The other evidence in the case
tending in any wise to connect defendant with the offense is evidence
showing motive and conspiracy to burn said building. If we look to the
statute, from its plain reading it would appear that the acts attributed to
the defendant would not constitute him a principal (see Penal Code
1895, arts. 74-78, inclusive), but would constitute him an accomplice
(see art. 79). Nor does it appear to us that defendant would be a prin-
cipal under any construction of these articles by our court. See Cook v.
State, 14 Texas Crim. App., 96; Bean v. State, 17 Texas Crim. App., 61.
These cases, and especially Bean's case, supra, propose to draw a distinc-
tion between a principal and an accomplice. In Bean's case, supra, it is
said: "The dividing line between the two is the commencement of the
commission of the principal offense. If the parties acted together in the
commission of the offense, they are principals. If they agreed to commit
the offense together, but did not act together in its commission, the one
who actually committed it is the principal, while the other, who was not
present at the commission, and who was not in any way aiding in its
commission, as by keeping watch, or by securing the safety or conceal-
ment of the principal, would be an accomplice. To constitute a prin-
cipal, the offender must either be present where the crime is committed,
or he must do some act during the time when the offense is being com-
mitted which connects him with the act of commission in some of the
ways named in the statute. Where the acts committed occur prior to the
commission of the principal offense, or subsequent thereto, and are in-
dependent of and disconnected with the actual commission of the prin-
cipal offense, and no act is done by the party during the commission of
the principal offense in aid thereof, such party is not a principal offender,
but is an accomplice or an accessory, according to the facts." This defi-

nition or distinction drawn between a principal and an accomplice appears to have been approved in the case of Smith v. State, 21 Texas Crim. App., 107. But there are some expressions in that case which would indicate that if the act is done in pursuance of a previously formed design, in which the defendant participated, and in which his mind united and concurred with the mind of the person actually committing the offense, such person would be guilty, though not actually present at the time, and not then performing some act in aid of the person committing the offense. However, it was held by the court in the Smith case that at the very time of the theft the defendant was then doing an act in connection with and in furtherance of the common design, to wit, the theft of the cattle—the proof showing that Smith had agreed to steal the cattle, and while the others were committing the theft he was waiting to receive them and drive them to market and dispose of them and divide the proceeds; that the conspiracy embraced all these acts. As we understand it, the principal enunciated in that case was the same as in the Cook and Bean cases, supra; that is, to constitute a person a principal, he must at the time the act is being done, if not personally present, be then doing some act in furtherance of the common design. We do not understand any of our decisions to go beyond this. Under this rule it can not possibly be claimed that appellant, at the time Thomas set fire to the building, was then engaged in doing any act in aid of said party. He was not then present; nor was he keeping watch, so as to prevent any interruption of the person engaged in the commission of said offense; nor was he at the time procuring aid, arms, or means of any kind to assist in the commission of the offense while it was being executed; nor was he at the time engaged in securing the safety or concealment of the offender; nor is it pretended that the person who set fire to said building was an innocent agent of appellant. But the proof is simply, so far as he was concerned, that he had agreed with the principal offender to aid him in the commission of said offense, and that he had advised and agreed to its commission, but was not then present. This, under the plain reading of the statute, made him an accomplice; and, being an accomplice, he was not a principal. In our opinion, the court should have submitted to the jury, under the evidence in this case, solely those counts which charged appellant with being an accomplice.

It appears that on the trial of the case the following letter was admitted in evidence against the defendant over his objection:

"KANSAS CITY, Mo., 11/24/'95.

"*Mr. C. A. Dawson*: I wrote you a letter last Wednesday, and gave it to Mr. P. to forward it to you, asking you to please do what you could for us at once. I am here broke. The weather very bad; sleet and snow all over the face of the earth. You can imagine my condition in a strange land, among strangers, without a cent. If you have not sent the bal. to Mr. P., please send it to undersigned at your earliest possible moment.

If you have, it is all O. K.; but, by you sending to me direct, I will receive it earlier. Please do not disclose my whereabouts. Will keep you posted as to where to direct your letters. If you have any news, write me. Your friend, "Will Roberts,

"Gen. Del., Kansas City, Mo.

"Tear this up as soon as you receive it and write at once.

"W. R. Clark.

"If you have sent the money to Mr. P., and could spare me the loan of a few dollars for a few days, it would be highly appreciated, and I will return it as soon as I can get straightened out. Will write you a long letter in a few days. Would write more now, but am in a hurry to get this off on the first train. I wrote you the turn things have taken. I have settled up everything concerning your matter, and everything comes to me. "C."

Address on envelope: "Return in 5 days to Will Roberts, Kansas City, Mo. Mr. Daniel Graham, Cameron, Texas. C/o Bob Wight."

Postmark: "Newton & Galveston R. P. O. Nov. 25, 1895." Stamped on back on envelope: "Cameron, 25 N. 1895."

Said letter is shown to have been taken from the office at Cameron by one Bob Wight about the middle of November, 1895, after the arrest of the defendant. The defendant never received or saw said letter prior to its being introduced in evidence against him. It was further shown that some time prior thereto, but after the fire, appellant was at Cameron, and told said Wight that he was expecting a letter from one Clark, then in the Indian Territory, in regard to going into business with said Clark, and that he did not want his wife to know anything about it, and requested him to get the letter; that said letter would be addressed to him in the assumed name of Daniel Graham; that said witness Wight did get one letter so addressed, and delivered it to the defendant; that the other letter introduced in evidence was received by said Wright as before stated. In connection with the introduction of said letter, it was proved by one Womack that said letter was in the handwriting of W. R. Clark; that he was acquainted with his handwriting. Appellant insisted that said letter was not admissible against him, because it was the declaration and statement of a co-conspirator made after the consummation of the object and purpose for which the conspiracy was formed, and because said letter was inadmissible, incompetent, and irrelevant, and prejudicial to the defendant, and because it was shown that said letter had never been received by the defendant and had never been read by him, and that he did not know the contents of said letter until subsequent to his arrest on this charge, and until the same was introduced in evidence against him. Said objections were overruled by the court, and the letter admitted in evidence against him. In our opinion, said letter was clearly inadmissible. For a discussion of this question, see the case of Dawson v. State, ante, p. 9.

In regard to the statements made by defendant to White & Co. of the condition of the business: Unquestionably, the same were admissible; and it appears that the statements made by Clark and Saucer subsequent to the fire, for the benefit of White & Co., handed by them to the defendant, and by him given to White & Co., were admissible, under the circumstances of this case. Furthermore, we believe that the books of Clark & Saucer, showing the original entries, but not mere statements therefrom, were admissible in evidence, in connection with the other testimony in the case tending to show a conspiracy on the part of appellant in conjunction with Clark and Saucer and Price to defraud White & Co. We do not believe that the letters sent out by White & Co. to parties at Lancaster, and returned to White & Co. undelivered, were admissible in evidence for the purpose of showing that said parties to whom said letters were addressed did not live in that neighborhood; but the testimony of witnesses who lived in that community, and were well acquainted, we believe, was admissible to show that the parties whom the original entries showed had sold cotton to defendant for White & Co. did not live in said community, said evidence tending to show that they were fictitious persons. It is not necessary to discuss the other assignments of error, as they are concerning matters not likely to occur on another trial, but for the errors pointed out the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*