CHARLES BUROW, JR. v. THE STATE.

No. 4487.   Decided April 2, 1919.

**1.—Theft of Cattle—Verdict—Amendment.**

Where, upon trial of theft of cattle, the verdict of the jury when first brought in was informal, there was no error to have the verdict corrected with the consent and approval of the jury; in addition the jury was properly polled, and there was no reversible error on that account.

**2.—Same—Principal—Accomplice—Conspiracy—Case Stated.**

Where, upon trial of theft of cattle, the evidence showed that defendant had agreed with others that the latter should take and steal the cattle from the possession of the owner and bring them to his stock pen for a stipulated sum, it being the intention of the defendant after he received the cattle to dispose of them, and that he gave them his wagon, etc., to bring the cattle, and that the latter went, stole the cattle, put them in the wagon, but before they delivered them to defendant were arrested, and that the defendant, at the time his co-conspirator caught the cattle and removed them, was doing nothing in furtherance of the common design, was not present when the cattle were taken and while his co-conspirators were taking them, and after they were taken did no affirmative act, although before they were taking agreed, advised and encouraged it, furnishing means to aid in its perpetration, he was an accomplice and not a principal. Following Jones v. State, 57 Texas Crim. Rep., 144, and other cases, distinguishing, Smith v. State, 21 Texas Crim. Rep., 107, and other cases.

Appeal from the District Court of Jim Wells.   Tried below before the Hon. V. W. Taylor, judge.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*S. H. Woods, W. R. Perkins,* and *Hicks, Hicks, Teagarden & Dickson,* for appellant.—Cited cases in the opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of cattle theft, and his punishment assessed at the lowest prescribed by law.

Appellant, Tomas Nunez and Manuel Garcia were jointly indicted for the theft of two head of cattle on February 14, 1916. The indictment was in three counts; the first charged the theft from the real owner; the second from a son who was in possession, control, etc., for her; and the third for receiving the cattle knowing they had been stolen. The second only was submitted to the jury; the others excluded.

Upon the motion of the defendants and in accordance with their agreement, a severance was had. Garcia was to be tried first; Nunez second, and appellant third, and the trials were so had. It seems Nunez and Garcia were both convicted before appellant was tried.

Appellant was a butcher in Alice, and dealt in and fed cattle for his butcher business, and also, it seems, bought and sold cattle. Nunez and Garcia, and also Pablino Martinez were employed by appellant, and had been for several months, continuously working for him as ordinary hands and feeding his cattle. For the purpose of hauling feed appellant had a team of mules and a wagon with very high sideboards and ends on it and a large sheet or cover. Nunez handled the team and wagon and did most of the hauling of the feed. Nunez and Martinez both testified for the State against appellant.

Antonio Perez, the alleged owner, who was in charge of the cattle and ranch for his mother, had them and a large number of other cattle in a large pasture a few miles from Alice.

The contention and theory of the State, and the testimony was amply sufficient to sustain it, was, that appellant entered into a conspiracy with his said three employes, Nunez, Garcia and Martinez, to steal from time to time, at night, cattle out of said ranch. That Garcia and Martinez were to go horseback to said ranch, rope and tie the cattle. Nunez was to follow them with the wagon and team. The three to put them in the wagon, haul them back to appellant's slaughter pen, and there deliver them to him or for him, and he was to pay them therefor. That the conspiracy and agreement between them embraced all of this before the transactions were complete, and embraced the several acts by the several parties in order to complete the whole transaction. The State proved by Nunez and Martinez in substance and effect that this system of stealing the Perez cattle had been carried out fully on three previous occassions to the time this theft was charged, beginning in the latter part of December and winding up with the fourth time on February 14, 1916, at which time they were caught. That all these thefts from the Perez ranch of cattle were in the night, and that the delivery thereof was made at appellant's butcher pen at night, and that his said three employes were paid by him for the cattle or for their services after their respective deliveries. That on each of the three previous occasions they had obtained and delivered, as stated, several head of cattle—as many as five or six

head at a time, and on the occasion when they were caught they had three head—two only of Perez. Sometimes the cattle thus stolen and delivered were to be, and were, slaughtered at once when they were fit for slaughter and appellant needed them for that purpose at the time. When they were not in condition to be slaughtered, or he did not need so many at the time, he would then place them in his pasture with his other cattle and have them fed. That this same arrangement would have been carried out in this instance if they had not been prevented by being caught.

The State proved that all of said Perez cattle stolen in this way had the Perez mark and brand on them, the brand in every instance was an old brand, that is, not at all fresh. That those of the cattle appellant did not at once slaugher but sent out to be fed, he had his brand put on them over the Perez brand, and had the whole ears cut off so that the Perez mark could not be seen. In addition, that even after he had slaughtered some of these cattle, before he put his brand on them and had taken the hides off, that he then had changed the Perez brand—burned over into his brand, and that numerous of these hides which he had had inspected and sold were obtained and showed this.

That on the night of February 14, 1916, in carring out said system and scheme and conspiracy, appellant procured his said three employes to go out to the Perez ranch, as they had been doing, and get cattle for him. That they all went out after night for that purpose, Garcia and Martinez going ahead on horseback, and Nunez following with appellant's wagon and team. That he furnished his wagon and team and sheet to them for the purpose, and armed Nunez with a six-shooter. That Garcia and Martinez reached the ranch, roped and tied three head of cattle,—two of Perez's and one of another owner and when Nunez reached them with the wagon the three put the cattle in the wagon, put the sheet over them so they could not be seen, and started back to appellant's butcher pen to deliver the cattle to him therein, as instructed and agreed in advance, by appellant. The owner and the officers had in some way got wind of the matter and secreted themselves under a bridge near the gate where these parties would necessarily come out of the pasture going to Alice to deliver the cattle. About 11 or 12 o'clock at night these three parties were returning with the cattle, and about the time they passed out of the gate the officers and posse made their appearance and undertook to arrest the three men. Garcia and Martinez fled and succeeded in escaping for a time, but the officers then caught Nunez with the wagon and took him and the cattle and put him in jail. They got the other two later. The cattle thus stolen on this occasion, as well as most or all of the others stolen on the three previous occasions, were thoroughly identified as the Perez cattle and stolen from him. The above is, perhaps, a sufficient general statement of the State's case.

Appellant testified denying the conspiracy, and any and all connection by him with the theft of the cattle on the night of February 14, or any of the three previous thefts. That he was not present at the time these cattle were roped and tied, put in the wagon and started back with to Alice, was shown without question. He testified in substance that he had no agreement or understanding and no conspiracy with his said three employes as testified to by them. That all and everything they did with reference to stealing any of said Perez cattle on the said four occasions was without his knowledge or participation in any way. He denied changing the brand on any of those cattle, or branding the hides after the cattle were killed, and denied cutting off their ears. In fact, he denied the State's case in every particular.

The credibility of the witnesses and the weight to be given to their testimony was solely for the jury. Clearly the jury believed the State's testimony, and disbelieved appellant's.

Appellant's main contention is, that the evidence showed that he was not a principal in the theft; that if it showed any guilty connection by him with the theft, it was that of an accomplice and not a principal. He properly raised and saved the point in various ways.

Appellant's contention in substance and effect is, that the theft of the cattle was complete and ended at the very time Garcia and Martinez roped and tied them, and that as he was not then and there bodily present, and all he did in advising and employing them to steal the cattle, and what arms and aid and means he furnished them, was all *before* they stole the cattle, it was error for the court to submit to the jury his guilt as a principal. That he could have been guilty only as an accomplice and not as principal.

There are many decisions of this court construing and applying our statutes on principals and accomplices which are directly in point and applicable to this case, and decisive against appellant.

The principles applicable are these: "The acts constituting an accomplice are auxiliaries only, all of which may be and are performed by him anterior and as inducements to the crime about to be committed (Penal Code, Arts. 79 to 85 inclusive); whilst the principal offender not only may perform some antecedent act in furtherance of the commission of the crime, but when it is actually committed is doing his part of the work assigned him in connection with the plan and furtherance of the common purpose, whether he be present where the main fact is to be accomplished or not. When the offense is committed, by the perpetration of different parts which constitute one entire whole, it is not necessary that the offenders should be in fact together at the perpetration of the offense to render them liable as principals. In other words, an accomplice, under our statute, is one who has completed his of-

fense before the crime is actually committed, and whose liability attaches after its commission, by virtue of his previous acts in bringing it about through the agency of or in connection with third parties. The principal offender acts his part individually, in futherance of and during the consummation of the crime." Cook v. State, 14 Texas Crim. App., 96; O'Neal v. State, 14 Texas Crim. App., 582.

"Evidence in proof of a conspiracy to commit crime will generally, from the nature of the case, be circumstantial. It is not necessary to prove that the defendants came together and actually agreed in terms to have that design and pursue it by common means. If it be proved that defendants by their acts pursued the same objects, often by the same means, one performing one part and another another part of the same, so as to complete it with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object (Slough's case, 5 Fed. Rep. 680), and under our statute such acting together would make all principal offenders, whether present bodily at the place of the offense or not (Berry v. The State, 4 Texas Ct. App., 492; Heard v. The State, 9 Texas Crim. App., 1; Wright v. The State, 18 Texas Crim. App. 358), and they are all principals and acting together as long as any portion or object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated and accomplished." (Smith v. State, 21 Texas Crim. App., 107).

"The true criterion in determining who are principals, it is believed, is, did the parties act together in the commission of the given offense? Was the act committed in pursuance of a common intent? Was the particular crime committed in pursuance of a previously-formed design in which the minds of all united and concurred? If so, then all persons who were guilty of acting together in the execution of a previously-formed design, existing in the minds of all at the time the offense was committed, and actuating and prompting the actual perpetrator, then all so connected with the offense are principals, without reference to which one or more of the participants committed the offense, or at what particular stage of the proceeding, so that it was in pursuance of the previously-formed scheme, and during the existence and execution of the common intent."

"All persons are principals who are guilty of acting together in the commission of an offense. So that, in determining the question whether one accused of crime is liable as a principal or principal offender, the inquiry is not as to what occurred prior to the commission of the given offense or subsequently thereto, but, Did the parties act together? Were they guilty of acting together in the commission of the crime or offense charged? Did the person or per-

sons involved in the investigation act together with others in the com-
mission of the offense? If, so, then he or they are, in law, principal
offenders. It cannot be intended that the acts refer to the very
fact of committing the offense.''

''All persons who shall engage in procuring aid, arms, or means
of any kind to assist in the commission of an offense while others
are executing the unlawful act, . . . are neither accessaries
nor accomplices, but are declared to be principals, and liable to
conviction and punishment as such.'' (Welsh v. State, 3 Texas
Crim. App., 413).

We will now cite and quote from some of the cases applying
these principles and our statutes.

In Welsh v. State, 3 Texas Crim. App., 413, Welsh had hands
gathering cattle for him which they were then to drive on to a
certain place. He instructed his hands to take all the cattle they
could find, and he would go ahead and make arrangements to
ship or sell them. He then left them and went several miles to
make and did make his arrangements to sell or ship them. While
he was thus away and not present, his hands took a certain cow
belonging to another, placed her with the herd, and drove her
with the herd to the place Welsh had named. He there accepted
this cow and sold her. He was held to be a principal and not an
accomplice, because he was engaged at the time of the theft in
performing his part in the consummation of the conspiracy to
steal and dispose of them. Smith v. State, 21 Texas Crim. App..
107.

In Scales v. State, 7 Texas Crim. App., 361, it was shown that
the stolen animals were taken in Wise county by two confederates
of Scales, and under his direction, and that after they were taken
from Wise to Clay county by them there Scales joined them and
went with them to the panhandle county where they were soon
afterwards captured with the animals. ''At the time of the actual
perpetration of the theft Scales was in Clay county. Scales and
three others were partners in the enterprise under an arrangement
to share the profits equally.'' Scales was convicted as a principal,
and his case affirmed.

In Watson v. State, 21 Texas Crim. App., 598, it was shown
that Watson and one Dickerson entered into an agreement, the
substance of which was that Dickerson would steal hogs and bring
them to Watson's house where they would be slaughtered, the
meat salted, etc., and the bacon to be divided equally between
them. In pursuance of this agreement Dickerson, assisted by Owens,
whom Dickerson induced to engage with him in the theft, stole
Long's hogs and drove them to Watson's house where they were
penned, slaughtered, etc. While Dickerson and Owens were en-
gaged in committing the theft, Watson was performing the part
assigned him by preparing the things necessary to slaughter and

put away the meat. The court said: "Although he was not actually present when the hogs were taken, he was engaged in procuring and supplying means to assist in the commission of the offense, while Dickerson and Owens were executing the unlawful act." He was held principal, and the judgment against him affirmed.

In the case of Smith v. State, supra, it was shown that several persons, in the absence of Smith, stole a number of head of cattle in Erath county and drove them some forty miles distant into Parker county where Smith was. Smith was not present when the parties took the cattle in Erath county. It was further shown that there was an arrangement between Smith and said other persons whereby they were to steal said cattle, drive them to Parker county where he was when he would join them, and that he would then take the cattle on to Fort Worth and sell them, and they would divide the proceeds. He was convicted as a principal and the judgment affirmed.

Quite a number of other cases to exactly the same effect could be cited; among them is Mason v. State, 31 Texas Crim. Rep., 306, and cases there cited, and various other cases cited in those we have mentioned above. Also the recent case of Simpson v. State, from Jefferson county, 81 Texas Crim. Rep., 389, decided in an opinion by Judge Morrow on May 30.

The facts in this case show that the conspiracy entered into between appellant and his said three employes did not terminate with their actually taking said cattle, but that it continued until they should deliver the cattle to him at his butcher pen and he pay them therefor, or pay for their services. From the State's case it was clear that this had been the course of conduct and the scheme and system which these parties had been operating upon in previous thefts exactly as this, and that in every instance his connection with the matter did not end until he had gotten the cattle himself. He instructed them to go that night and steal and deliver to him the cattle. He armed Nunez with a pistol and furnished him and the others his wagon and team to haul these cattle to his butcher pen, and his sheet to conceal them while hauling them to him. He was furnishing everything that was necessary on his part to consummate the whole transaction by the delivery of the cattle to him in his butcher pen, and if said parties had not been caught and arrested before they delivered the cattle to him, they would have done so as agreed between him and them. The evidence showed that he was a principal and not an accomplice.

His complaints of the court's charge on the subject of principals presents no error. They are really disposed of in passing upon the question above, that the evidence was sufficient to show that he was a principal and not an accomplice.

What we have said above also disposes of his contention that the court should have charged alibi in his favor. If we are correct in which we have said above, the question of alibi was wholly inapplicable.

The verdict of the jury when first brought in was informal, as the court so told them. It was the duty of the court and authorized by the statute and the decisions to correct the verdict at the time with the consent and approval of the jury. When he did correct it, they as a body expressly assented to it as corrected. In addition, at appellant's instance, they were polled and each in answer said it was his verdict.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

April 2, 1919.

MORROW, Judge.—I am not satisfied that there are facts in this case which would authorize the finding by the jury that appellant was a principal within the meaning of our statute, article 74 P. C. This article, in connection with others following it in the same Chapter, has been, I think, correctly construed in the leading case of Smith v. State, 21 Texas Crim. App., 107 and the cases following it including Simpson v. State, 81 Texas Crim. Rep., 389, 196 S. W. Rep., 835. There are other decisions by this court, notably Tittle v. State, 31 S. W. Rep., 677, and Dawson v. State, 38 Texas Crim. Rep., 50, which, in passing on the facts similar to those involved in the instant case, I think declare that the principles applied in Smith's case were not applicable to this one. The cases mentioned, Dawson and Tittle cases, were written in the light of the Smith case, and without modifying it fixed a limitation upon its scope which appears to me should control this decision. The rule laid down in the leading case mentioned is that, where persons enter into a conspiracy to commit the crime of theft of property contemplating that one or more of the conspirators shall take the property from the possession of the owner and deliver it to another conspirator not present at the time of the taking, to be by him converted, and the proceeds distributed among all, and that when this conspiracy is carried into effect by the taking of the property from the possession of the owner by one or more of the conspirators delivering it pursuant to agreement to another to be converted by him, pursuant to the previous agreement, to the end that the proceeds may be distributed, all are principals within the meaning of the statute. This construction of the statute was regarded by one of our greatest jurists as unwarranted, in that there was a failure of the State to prove that the conspirator, to whom the property was delivered ·by those first acquiring possession of it from the owner, was, at the time

it was taken from the possession of the owner, doing any act in furtherance of the common design. See dissenting opinion of Judge Hurt in, Smith v. State, 21 Texas Crim. App., 107. The majority held, however, that while, at the time the property was taken possession of, one of the conspirators was at his home some forty miles distant from the place of the taking pursuing his ordinary avocations disconnected with the theft; that his previous agreement to take charge of the property when delivered to him and convert and divide the proceeds thereof and the fact that he subsequently did these things, sufficiently satisfied the terms of the statute which declare that to make him a principal he must be doing some act in furtherance of the common design at the time the theft was committed. This view of the majority has since been accepted and applied by this court, and is accepted by the writer as an established interpretation of the statute which is not to be departed from, and from which there is no desire or intention here to depart. The sole question is: do the facts from the standpoint of the State bring the appellant within this rule? In Tittle's case, 35 Texas Crim. Rep., 96, the court, in passing upon the facts which tended to show that appellant and others conspired to steal cattle; that the others were to actually take them from the possession of the owner, and appellant to receive them drive them to market, sell them and distribute the proceeds, specifically held this did not bring into play the application of the rule in the Smith case, supra. The facts are meagerly reported. As we understand them, however, there was evidence tending to show that appellant, after making the agreement and after the cattle were taken, did not come into possession of them, nor take part in their conversion. In the later case of Dawson v. State, 38 Texas Crim. Rep., 50, Smith's case was again discussed, and the construction of the statute there given held inapplicable to a state of facts in which the accused agreed to participate in an offense which was subsequently committed by his co-conspirators in his absence and in which he took no actual part, and it is there held that the true rule marking the dividing line between principals and accomplices was laid down in Bean v. State, 17 Texas Crim. App., 60, and this without declaring the rule applied in Smith's case as sound as applied to the facts existing. The subsequent action of this court indicates that these decisions are not in conflict with the Smith case, but that the facts passed upon distinguish it therefrom. For instance, in Kaufman v. State, 70 Texas Crim. Rep., 438, 159 S. W. Rep., 58, in passing upon facts singularly similar to those involved in the case in hand, the court held that the person receiving the goods after they were taken from the owner having previously encouraged the takers to do so, was not a principal in the theft, but was guilty of the offense of receiving stolen property, a crime that has uniformly been held dis-

tinct and separate from the crime of theft. Gaither v. State, 21 Texas Crim. App., 527; Clarke v. State, 81 Texas Crim Rep., 157, 194 S. W. Rep., 157. The element of distinction is tersely put in Welsh v. State, 3 Texas Crim. App., 413 and Rountree v. State, 10 Texas Crim. App., 110, in the statement that, to hold one liable as a principal, there must be a concurrence of act and intent.

In this case the State's position is that appellant having agreed with certain Mexicans that the latter should take the cattle from the possession of the owner and bring them to the stock pens of the appellant and that appellant would pay them a stipulated sum of money for the cattle, it being the intention of the appellant after he received the cattle to dispose of them and retain the proceeds; that to aid the Mexicans in securing possession of the cattle appellant, before they were taken and pursuant to the conspiracy, put in their possession a pistol and a wagon; that the Mexicans using the wagon took the cattle from the pasture of the owner, and while enroute to appellant's pens were arrested and the cattle taken from their possession. The pens in question had been previously constructed and long used. Appellant, at the time the Mexicans caught the cattle and removed them from the pasture, was doing nothing in furtherance of the design, except that it may be inferred from the acts stated above. Was he a principal, or was he an accomplice? Do the facts bring him within the rule in the Smith case, supra, or are they within the rule in Dawson's case, supra? The facts in the Smith case showed that Smith and others entered into a conspiracy to steal cattle which were in Erath County, the plan agreed upon being that the others should take possession of the cattle in Erath County, bring them to Parker County, deliver them to appellant, who would remove them to Tarrant County, sell them and divide the proceeds. This was done. Appellant was held a principal upon the idea that the transaction was not complete as to any of the conspirators until the cattle were sold and the proceeds distributed. In the instant case it was not contemplated that the Mexicans should have any interest in the cattle or in the manner of their distribution, but that they should deliver them to appellant, receive their pay, he taking the risk and assuming the responsibility of disposition upon his own account. To this extent the facts of the cases differ. The transaction was ended so far as the Mexicans were interested when they delivered the cattle to appellant and received the money. In the Smith case the agreement was carried into effect. In this case appellant did not receive the cattle, though he intended to do so. He was not present at the taking, and the part he was to perform after the taking was never done. Do his acts and his intent concur so as to make him a principal? Does his intention to do the act of receiving and paying for the cattle meet the requirements of the

statute, that he must do some act in the perpetration of the theft?
The statute on accomplices is as follows:

"An accomplice is one who is not present at the commission of an
offense, but who, before the act is done, advises, commands or en-
courages another to commit the offense; or

"Who agrees with the principal offender to aid him in commit-
ting the offense, though he may not have given such aid; or

"Who promises any reward, favor or other inducement, or threat-
ens any injury in order to procure the commission of the offense; or

"Who prepares arms or aid of any kind, prior to the commission
of offense, for the purpose of assisting the principal in the execution
of the same."

The acts which make one guilty as an accomplice are. performed
before the actual offense is committed. Branch's Ann. P. C., p. 358,
Sec. 700; West v. State, 28 Texas Crim. App., 1; Pendley v.
State, 71 Texas Crim. Rep., 281, 158 S. W. Rep., 811, and other
cases there cited. The cattle were taken by others. Appellant was
not present when they were taken, and while his co-conspirators
were taking them and after they were taken, did no affirma-
tive act. Before they were taken appellant agreed to it,
advised it, encouraged it, offered an inducement for it in the
promise to purchase the cattle, and furnished arms and a wagon
to aid in its perpetration. None of the elements constituting
him an accomplice appear to be wanting. The element of actual
participation at the time or during the commission of the offense
required to constitute him a principal appear to be absent. Michell
v. State, 44 Texas Crim. Rep., 228; Menefee v. State, 67 Texas
Crim. Rep., 201, 149 S. W. Rep., 138; LaFell v State, 69 Texas
Crim. Rep., 307, 153 S. W. Rep., 884; Silvas v. State, 71 Texas
Crim. Rep., 213, 159 S. W. Rep., 223; Womack v. State, 74 Texas
Crim. Rep., 640, 170 S. W. Rep., 139; Jones v. State, 57 Texas
Crim. Rep., 144. The mere fact that a conspiracy is shown does
not make all parties to the conspiracy principals, whether they
were present or not when the offense was committed. Branch's
Ann. P. C., p. 359; O'Quinn v. State, 55 Texas Crim. Rep,, 18;
Bell v. State, 39 Texas Crim. Rep., 677; Sessions v. State, 37
Texas Crim. Rep., 58; Phillips v. State, 26 Texas Crim. App.,
228. To hold appellant a principal, in my judgment, extends
the construction of the statute beyond the limit fixed in the previ-
ous decisions of this court. It would make his guilt as a princi-
pal dependent not upon his acts done in furtherance of the com-
mon design, but at most upon an intent to do acts which were
never done.

I, therefore, believe that the correct disposition of the case
requires that the motion for rehearing be granted, and the judg-
ment reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*