O. G. Kelley v. The State.

No. 12894.   Delivered December 18, 1929.

The opinion states the case.

*Garland and Yonge* of Lamesa, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, Presiding Judge.—Cattle theft is the offense; penalty, confinement in the penitentiary for a period of two years.

There is no material conflict in the evidence.   C. A. Barron was the owner of a certain white-faced cow which was branded "H K" connected.   The brand was not that of Barron, but was an animal he had purchased.   The cow was in the pasture of Barron, which adjoined that of the appellant.   Barron discovered tracks indicating that a cow had been driven out of his pasture into that of the appellant.   Following the tracks to a point about 600 feet from the appellant's dwelling, the head, entrails, and a part of the hide of a cow were found and identified by Barron.   This took place on the 2nd day of November.   A few days later Barron ascertained from a butcher at a nearby town that the appellant had sold the dressed beef to the butcher and the hide to a produce dealer.   The appellant was told by Barron that appearances led to the conclusion that his cow had been killed in the pasture of the appellant at a place where the appellant admitted was his butchering place.   Appellant replied that if such was the case he would pay for the animal.   Barron stated that he would deliberate upon the question of accepting pay and afterwards concluded to file complaint.

From the testimony of the witness King, it is shown that a cow of a description similar to the one killed had been sold by him to the

appellant; that sometime after it had been delivered to the appellant, the cow returned to the premises of King and was subsequently recovered by the appellant.

According to the testimony of Herman Kelley, the nineteen-year old son of the appellant, direction was given by the appellant to butcher the cow that had been purchased from King. Herman Kelley knew the animal, and in searching for her in the appellant's pasture, he observed what he took to be the animal in the pasture of Barron. He drove the cow into the pasture of the appellant and butchered it with the assistance of two young men by the name of Jayroe, who also testified in the case. At the time he killed the cow, Herman Kelley believed it to be the animal which had been bought from King, but in skinning her, he discovered that it was branded "H K" connected, which was strange to him and not the brand of Barron. After butchering the cow, the beef was placed by Herman Kelley in the back end of a car and the hide was placed in a sack, and in that condition taken by the appellant to a nearby town and sold. According to his testimony, Herman Kelley did not know the owner of the cow until some days after it had been killed, at which time his father told him that Barron claimed that the cow which had been killed belonged to him. Herman Kelley, then, for the first time, told his father all the circumstances.

Appellant testified that at the time he sold the beef and hide from the animal, he thought that the animal killed was the one he had purchased from King; that later he ascertained from King that the cow he had sold to the appellant had returned to its range. The appellant then recovered it. As soon as he learned that the cow killed was that of Barron he offered to pay him the value of the cow. The evidence shows that at the time the animal was taken by Herman Kelley, the appellant was at his home several miles away; and that at the time she was butchered, he was not nearer than 600 yards to the place where the cow was butchered. There is no evidence that the appellant saw the animal that was butchered while it was alive, or that he had any knowledge that there had been a mistake and that Barron's cow had been killed, but thought that the animal killed was the one he had purchased from King.

There being no testimony showing that the appellant was present at the time the animal was taken or at the time she was killed, and no evidence that at the time of the taking or the killing the appellant was doing anything toward the disposition of the animal or otherwise engaged in aiding his son, we fail to perceive upon what legal

theory his conviction of theft of the animal can be justified. The statute on principals, Title 3, Chap. 1, P. C., 1925, defines the circumstances under which one may be held as a principal offender, that is, may be convicted for the act of another. The presence of the accused either at the time and place where the offense was committed, or at the time was keeping watch or doing something to prevent interruption, or to aid those who were engaged in committing the offense is imperative. The precedents upon the subject are numerous and will be found collated in Vernon's Ann. Tex. P. C., 1925, Vol. 1, p. 63, note 22. Among the later cases upon the subject are Benavides v. State, 85 Tex. Cr. R. 375; Williams v. State, 82 Tex. Cr. R. 215; Smith v. State, 102 Tex. Cr. R. 139; Burow v. State, 85 Tex. Cr. R. 133, see page 140.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*