Richard Joseph HADDAD, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–92–00470–CR.

Court of Appeals of Texas,
Dallas.

Aug. 16, 1993.

Discretionary Review Refused
Nov. 17, 1993.

Richard Alan Anderson, Dallas, for appellant.

Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, for appellee.

Before OVARD, MALONEY and ROSENBERG, JJ.

## OPINION

MALONEY, Justice.

A jury convicted Richard Joseph Haddad of obscenity and assessed a six month jail sentence and a fine of $2000. In five points of error, appellant contends the trial court erred in: (1) not granting a mistrial during voir dire; (2) instructing the jury on the law of parties; (3) admitting explicit sexual videotapes; and (4) admitting extraneous offenses. Appellant also contends the evidence is insufficient to affirmatively connect him as a party to the offense.

We overrule appellant's sufficiency point of error. Because we find the trial court should have granted appellant's motion for mistrial, we reverse the trial court's judgment and remand this cause for a new trial.

## STATEMENT OF FACTS

The Dallas Police Department executed a search warrant at appellant's residence. Among the items seized was a videotape entitled "Jubilee of Eroticism." Two weeks after the search, an undercover officer purchased a copy of this same videotape from a salesclerk at Mockingbird Lane 24 Hour News (Mockingbird News). The undercover officer had arrest warrants issued for the salesclerk and appellant.

## SUFFICIENCY OF THE EVIDENCE

In his second point of error, appellant maintains "the evidence is insufficient as a matter of law to provide an affirmative link in connection to appellant as a party to the offense of possession of obscene material with intent to promote." Appellant argues that there is no link between appellant and the salesclerk.[1] No one testified that he had ever seen appellant in Mockingbird News. Appellant claims he was just someone who,

---

1. Appellant does not question the sufficiency of the evidence to show appellant's knowledge of the character and content of the videotape.

as recently as one month before the sale, had an ownership or management interest in Mockingbird News.

### 1. Standard of Review

■ In analyzing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). We use the same standard to review circumstantial evidence and direct evidence. *Geesa v. State,* 820 S.W.2d 154, 160–61 (Tex.Crim.App.1991). We consider all the evidence whether rightly or wrongly admitted. *Nickerson v. State,* 810 S.W.2d 398, 400 (Tex.Crim.App.1991).

■ The fact finder's verdict must stand unless we find the verdict irrational or unsupported by more than a "mere modicum" of evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). In a circumstantial evidence case, proof amounting to only a strong suspicion is not enough. *Vaughn v. State,* 607 S.W.2d 914, 921 (Tex. Crim.App. [Panel Op.] 1980). Nevertheless, every fact need not point directly and independently to the defendant's guilt; a conclusion of guilty can rest on the combined and cumulative force of all incriminating circumstances. *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982).

■ The jury is the sole judge of the witnesses' credibility and testimonial weight. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). It can believe or disbelieve any part of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury may also draw reasonable inferences and make reasonable deductions from the

evidence within the context of the crime. *Benavides v. State,* 763 S.W.2d 587, 588–89 (Tex.App.–Corpus Christi 1988, pet. ref'd).

### 2. Law of Parties

■ "A person is criminally responsible as a party to an offense if the offense is committed by ... the conduct of another for which he is criminally responsible...." Tex.Penal Code Ann. § 7.01(a) (Vernon 1974). The code states:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

. . . .

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Tex.Penal Code Ann. § 7.02(a). When an accused promotes or assists in the commission of an offense, he also shares the criminal responsibility. *See Scott v. State,* 754 S.W.2d 268, 275 (Tex.App.–Corpus Christi 1988, pet. ref'd). The evidence must show not only the illegal conduct but also that the defendant acted with the intent to promote or assist such conduct. *Beier v. State,* 687 S.W.2d 2, 3 (Tex.Crim.App.1985), *citing Herring v. State,* 633 S.W.2d 905 (Tex.App.–Dallas 1982), *aff'd on other grounds,* 659 S.W.2d 391 (Tex.Crim. App.1983); *Miranda v. State,* 813 S.W.2d 724, 732 (Tex.App.–San Antonio 1991, pet. ref'd). The accused must know that he was assisting in the offense's commission. *Amaya v. State,* 733 S.W.2d 168, 174–75 (Tex. Crim.App.1986). Any agreement to commit an offense "must be *before or contemporaneous* with the criminal event." *Beier,* 687 S.W.2d at 3–4 (emphasis added).

■ We examine the events occurring before, during, and after the commission of the offense to determine whether a defendant participated as a party. The defendant's acts can show an understanding and common design to commit the offense. *Burdine v. State,* 719 S.W.2d 309, 315 (Tex.Crim.App. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *see Gutierrez v.*

*State,* 628 S.W.2d 57, 67 (Tex.Crim.App. [Panel Op.] 1982).

■ A defendant may be held criminally responsible even if he was not present during the offense. *See, e.g., Thompson v. State,* 697 S.W.2d 413, 417 (Tex.Crim.App.1985) (evidence that a defendant drove the getaway car to and from a burglary was sufficient to convict the driver as a party to the offense); *Webber v. State,* 757 S.W.2d 51, 55–56 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd). A person cannot escape criminal liability merely "by insulating himself from the actual perpetrator of the offense." *Scott,* 754 S.W.2d at 275.

■ Circumstantial evidence alone can be sufficient to show that one is a party to the offense. *Wygal v. State,* 555 S.W.2d 465, 469 (Tex.Crim.App.1977); *Miranda,* 813 S.W.2d at 732. The jury may infer participation in and encouragement to do a criminal offense from the circumstances. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987) (participation); *Jefferson v. State,* 114 Tex. Crim. 489, 26 S.W.2d 1064, 1066 (1930) (on mot. for reh'g) (encouragement). We evaluate each circumstantial evidence case on its own facts. Each case stands or falls on the cumulative effect of the trial evidence produced. *See Alexander v. State,* 740 S.W.2d 749, 758 (Tex.Crim.App.1987).

■ Motive is a circumstance indicating guilt. *See Harris v. State,* 727 S.W.2d 537, 542 (Tex.Crim.App.1987); *Miranda,* 813 S.W.2d at 733. That a defendant stood to receive financial gain from the offense is evidence of motive. *Id., citing Swink v. State,* 617 S.W.2d 203, 208 (Tex.Crim.App.), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 648, 70 L.Ed.2d 624 (1987), *overruled on other grounds, Griffin v. State,* 765 S.W.2d 422, 427 (Tex.Crim.App.1989).[2]

### 3. Postoffense and Post*Geesa*

Appellant contends that no evidence linked appellant to Mockingbird News "subsequent to the instant offense." He argues that the State introduced no evidence to show that appellant "did not renounce or sell all interest he had in Mockingbird Lane News" between the time of the search of his residence and the date the undercover officer bought the videotape from Mockingbird News.[3]

■ Under the law of parties, appellant must act as a party to the offense either *before or contemporaneous* with the offense. *See Beier,* 687 S.W.2d at 3–4. Because the trial began after November 5, 1991, appellant cannot prevail under the theory that the State did not negate a reasonable hypothesis—the possibility that appellant no longer owned Mockingbird News. *Compare Geesa,* 820 S.W.2d at 160–61 (rejected analytical construct of reasonable hypothesis for evidentiary review in cases tried after November 5, 1991) *with Carlsen v. State,* 654 S.W.2d 444, 447 (Tex.Crim.App.1983) (before November 5, 1991, in circumstantial evidence cases, the courts determined whether the evidence viewed in the light favorable to the verdict excludes every reasonable hypothesis except the defendant's guilt).

### 4. Application of Law to the Facts

■ The State alleged that appellant "possess[ed] with intent to promote obscene material, namely: one video "Jubilee of Eroticism," by offering to sell said obscene material ... and [appellant] knew the content and character of the material." To prove the allegations in this information, the State had to show: (1) that appellant solicited, encouraged, directed, aided, or attempted to aid (2) the clerk in the sale of the videotape 'Jubilee of Eroticism,' (3) that appellant did so, with

---

2. *Cf. Skinner v. State,* 652 S.W.2d 773, 775 (Tex. Crim.App.1983). Skinner, although a paid employee, did not select the movie; nor did she have a financial interest in the theater. The court held that salary alone was not a sufficient financial gain to show motive.

3. *Cf. State v. Entertainment Specialists, Inc.,* 386 So.2d 653, 655–56 (La.1980). The defendant prevailed under the reasonable hypothesis construct although the State introduced a lease which identified the defendant as lessee of the premises where the films were shown. That the defendant leased the premises *did not eliminate the reasonable hypothesis* that the defendant did not know the nature of films being shown, sublet the premises with or without the permission of the owner, or dissolved or assigned the lease before the showing of the films.

intent to promote or assist the sale of this videotape, and (4) that appellant had knowledge of the character and content of the film.

■ Appellant relies on *Beier v. State,* 687 S.W.2d 2 (Tex.Crim.App.1985), as authority to show that the evidence was insufficient as a matter of law to connect appellant as a party to the offense. The *Beier* court found that "the State failed to prove an act by appellant that directed, aided, encouraged, or assisted in the commission of the offense, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* at 5.

In *Beier,* the State introduced evidence that Beier cleared the cash register, spoke with the clerk, and began to leave the store while the undercover officer was purchasing the film from the salesclerk to show that Beier was the store manager and aware of its activities. *Id.* at 3 n. 3. When the police arrested Beier, they found a list of employees and a piece of paper which included instructions on how to deal with the vice squad.

The *Beier* court opined that "[w]hile clearing the cash register may be an act by which appellant intentionally and knowingly assisted a common undertaking to promote obscenity, it escapes us how it can be construed *as an act that solicited, encouraged, directed, aided, or attempted to aid the sale of the film."* *Id.* at 4. This came too close "to authorizing appellant's conviction based upon proof of his status as the manager of an enterprise, so long as he knew that the enterprise had criminal potential." *Id.* It reminded us that "[u]nder our law[,] a person is not punished for his status, but for his conduct." *Id., citing Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

### a. RJH Management Company

During the search of appellant's residence,[4] the officers seized the items that tended to connect appellant to RJH Manage-

ment Company (RJH). They found and retrieved:

(1) a business card which showed appellant, Richard Haddad, as RJH's president; and

(2) an invoice, dated September 7, 1989, from Gourmet Video (the uncontradicted evidence showed that Gourmet Video only marketed sexually explicit materials) and an envelope postmarked September 21, 1989, from Gourmet Video addressed to "RJH Management ... att'n Richard." The invoice showed:

(a) items shipped to Mockingbird News and billed to RJH at appellant's home address;

(b) under the caption "Bill to Customer," the name "Richard" appears; and

(c) approximately thirty videotapes, including one copy of "Jubilee of Eroticism" sent to Mockingbird News.

### b. Mockingbird News

Additional evidence connected appellant to Mockingbird News. The Comptroller of Public Accounts, by affidavit under seal, identified Richard Joseph Haddad as the individual who, on the date of the offense, held the sales tax permit for Mockingbird News. The affidavit certified that the sales tax number "was issued to Richard Joseph Haddad, ... Arlington, Texas 76012, [as] Sole Owner" of the "Mockingbird Ln. 24 HR News." At appellant's residence, the officers seized:

(1) a Mockingbird News checkbook;

(2) another box of seven videotapes, including multiple copies of "Jubilee of Eroticism" together with advertising slicks;[5] and

(3) in a separate envelope, additional advertising slicks.

### c. Sale of Videotape

Approximately two weeks after the officers executed the search warrant, an undercover officer went into Mockingbird News. When he found a copy of "Jubilee of Eroticism," he

---

**4.** According to Tarrant County tax records, Richard Joseph Haddad had paid taxes on the searched residence since April 24, 1985.

**5.** Slicks are a type of advertising poster that promote videotape sales. The producers or distributors of sexual-explicit videotapes send businesses these advertisements for store display.

remembered that title was one of the video-tapes listed on the invoice found in appellant's residence. He purchased a copy from a salesclerk.

Appellant correctly concludes that a sales tax permit alone does not prove ownership. *See* TEX. TAX CODE ANN. § 151.052(b) (Vernon 1992). However, a reasonable jury could infer from RJH's business card, tax permit, videotape invoice and envelope, and Mockingbird News checkbook that (1) appellant was the president of RJH, and (2) he owned and directly or indirectly operated Mockingbird News.[6] As owner of Mockingbird News, appellant had a financial motive in promoting and assisting the sale of the videotapes at the store. The jury could consider his financial motive as a circumstance indicating guilt.

The jury could rely on the appellant's actions to show an understanding and common design to commit the offense. The jury could have compared the signature "Richard Haddad" on a check from a different account to register entries in Mockingbird News checkbook. The jury could have concluded that the same person who signed the check made the register entries.[7]

Any rational trier-of-fact could reasonably infer from the above evidence that appellant acted with intent to promote and assist the salesclerk in the sale of the film "Jubilee of Eroticism" by aiding, or attempting to aid, and supplying for sale this videotape to Mockingbird News.

■ Because the officers seized multiple copies of "Jubilee of Eroticism" from appellant's residence, the jury could infer that appellant intended the films for sale and not for personal use. Appellant assisted in purchasing "Jubilee of Eroticism" and other videotapes. He stored videotapes as inventory. The shipping company billed appellant directly and shipped one copy of "Jubilee of Eroticism" to Mockingbird News. From this

evidence, the jury could infer an agreement to commit the offense.

We find the evidence sufficient to show appellant acted as a party in the commission of the offense although no direct evidence showed appellant was ever seen in Mockingbird News. We overrule appellant's point of error number two.

## VOIR DIRE EXAMINATION

In point of error number one, appellant contends that the trial court erred in denying his request for mistrial. He claims that the prosecutor made certain voir dire statements solely to inflame the jury. Appellant argues that the prosecutor interjected extraneous matters before the jury to prejudice the panel against the accused. The State responds that the prosecutor's remark was merely "an attempt to tell the jury the context in which he saw certain kinds of material, which he later described."

### 1. Applicable Law

■ A defendant is not entitled to a perfect trial, but, he is entitled to "at least one tolerably fair trial." *Brown v. State*, 168 Tex.Crim. 67, 323 S.W.2d 954, 957 (Tex.Crim. App.1959). An accused should only be convicted with evidence that demonstrates he is guilty of the offense charged. The prosecutor should not arouse prejudice in the jurors' minds with extraneous material that is unrelated to the offense charged. *Koller v. State*, 518 S.W.2d 373, 378 (Tex.Crim.App.1975).

■ We examine each claim of prosecutorial misconduct on a case-by-case basis. *Stahl v. State*, 749 S.W.2d 826, 830 (Tex. Crim.App.1988). We not only look at the facts of each case, but also consider the probable effect on the jurors' minds. *Hodge v. State*, 488 S.W.2d 779, 781–82 (Tex.Crim. App.1972). A jury instruction cannot cure the error when the prosecutor continually

---

6. *See Kramer v. United States*, 293 A.2d 272, 274 (D.C.1972). "[T]he application for a certificate of occupancy and the certificate itself issued by the government of the District of Columbia to [defendant], both introduced without objection, are certainly at least some evidence that [defendant] was the proprietor of the bookstore."

7. *See* TEX.R.CRIM.EVID. 901(b)(3) & (4). The State offered and the trial court admitted evidence from both checking accounts. An undercover officer compared the handwritings outside the presence of the jury. He determined the same person wrote both entries. *See Strong v. State*, 805 S.W.2d 478, 486 (Tex.App.–Tyler 1990, no pet.).

attempts to connect appellant with "organized crime." *Dexter v. State*, 544 S.W.2d 426, 428 (Tex.Crim.App.1976).[8]

### 2. Application of Law to the Facts

■ During voir dire while discussing healthy and unhealthy interests in sex, the prosecutor said "in my position with the Organized Crime Division, I see things." Appellant objected to the relevancy of the prosecutor's statement. Because the statement had no relation to the questions the prosecutor was asking the juror, appellant argued the prosecutor used it solely to inflame the jury. The trial court sustained the objection and instructed the jury to disregard the comment, however, the trial court denied appellant's request for a mistrial.

The State charged appellant with possession with intent to promote obscene materials. He was not charged with criminal conspiracy, Tex. Penal Code § 15.02 (Vernon 1974), or engaging in organized criminal activity, Tex. Penal Code § 71.02 (Vernon 1989). The only reason the prosecutor could have referred to organized crime would be to prejudice the prospective jurors' minds. The prosecutor planted the seed in the jurors' minds that appellant was connected with organized crime. Having sown the seed, every piece of evidence that suggested a nationwide organization nurtured appellant's connection to organized crime.

Even if the trial court's instruction could have cured the State's comment in voir dire, the State's underlying theme of, and continued indirect references to, organized crime throughout the trial was calculated to prejudice appellant. The State's course of trial conduct planted in the jury's mind that appellant was part of a larger investigation, this offense was linked to "organized crime," and

convicting appellant would combat "organized crime." *See Dexter*, 544 S.W.2d at 428.

The trial court erred in not granting appellant's mistrial. Its instruction to the jury did not cure the error. We now determine if this error harmed appellant.

### 3. Harm Analysis

#### a. Applicable Law

■ Although Texas has not established a general test for reversal on prosecutorial misconduct, the court of criminal appeals has reversed when (1) the defendant objected to the prosecutor's conduct; (2) the prosecutor's actions deliberately violated an express court order; and (3) the prosecutor's misconduct was so blatant to border on being contumacious.[9] *Stahl*, 749 S.W.2d at 831, *citing Landry v. State*, 706 S.W.2d 105, 111 (Tex.Crim. App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986), *discussing Dexter*, 544 S.W.2d 426, *Boyde v. State*, 513 S.W.2d 588 (Tex.Crim.App.1974), and *Stein v. State*, 492 S.W.2d 548 (Tex.Crim.App. 1973).

The appellate rules provide:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Tex.R.App.Proc. 81(b)(2). In conducting the harm analysis required by rule 81(b)(2), we follow the two-step process set out in *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim. App.1989). First we isolate the error and its effects. The *Harris* court listed the following six factors to aid appellate courts in performing the analysis:

(1) the source of the error;

---

8. In *Dexter*, the trial court also granted an order which forbid the prosecutor from referring to the "syndicate," "organized crime," or the "mafia." The prosecutor placed a filing cabinet facing the jury. The cabinet had a sign on it that said "organized crime." Upon objection, the trial court ordered the sign removed, but refused to grant a mistrial. Reversing the trial court, the Court of Criminal Appeals said "[a] motion requesting the court to instruct the jury to disre-

gard the sign on the file cabinet would not have cured the injury.... [because] [t]he prosecutor ... attempted to connect the defendant with organized crime throughout the course of the trial." *Id.* at 427–28.

9. As in *Stahl*, we also "find that the prosecutor's conduct was blatant ... [but] not contumacious as we understand that term." 749 S.W.2d at 831, n. 6.

(2) the nature of the error;

(3) whether or to what extent the State emphasized the error;

(4) its probable collateral implications;

(5) how much weight a juror would probably place on the error; and

(6) whether declaring the error harmless would encourage the state to repeat it with impunity.

*Id.* at 587. After completing this analysis, we determine whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* at 588.

### b. Application of Law to Facts

 During voir dire examination, the prosecutor first raised the issue of "organized crime." The comment had no relation to any voir dire questions or the prospective jurors' answers.

During trial, the prosecutor introduced a checkbook, a check, invoices, and sales tax permits to show that appellant owned several other book stores. These bookstores also sold videotapes from Gourmet Video, a firm which marketed sexually explicit videotapes. The State also introduced evidence that most sexually explicit videotapes found in adult bookstores come from California wholesalers.

The State then called Joe Spallone, a witness from California, as record's custodian for Gourmet Video. Because the trial court had already admitted the Gourmet Video invoices into evidence, the prosecutor did not call Spallone to authenticate the invoices as business records. The prosecutor primarily questioned Spallone about Gourmet Video's distribution areas. The prosecutor emphasized that Gourmet Video shipped nationwide, but no longer shipped its videotapes to Texas and Utah. In final arguments, the prosecutor repeatedly referred to the connection with the out-of-state sexually explicit

film industry, and the reasons that Gourmet Video abandoned its Texas and Utah clients. None of this testimony was relevant to the offense being tried. We perceive no reason for Spallone's testimony except to show that "conservative" [10] Texas was keeping organized crime out of the state. Each reference, however, tended to link appellant to a large, organized syndicate that distributed sexually explicit videotapes and films.

Contrary to the State's assertions in its brief, the prosecutor, acting in a calculated manner and over objections, implied appellant's connections to organized crime throughout the trial. We disagree with the State that the error was harmless. We determine that the comment, when combined with the other inferences of organized crime, could not be cured by the trial court's instruction. Any rational trier of fact might have reached a different result if the error and its effects had not occurred.

Additionally, the complained-of error occurred early in the voir dire examination. The trial court could have excused the jury panel and brought in a new jury panel with little time and expense lost. That action would discourage the State from repeating its error with impunity.

We sustain appellant's point of error number one. Having sustained appellant's point of error number one, we need not reach appellant's points of error three through five.

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

---

**10.** The prosecutor, in questioning Spallone why Gourmet Video no longer distributed to Texas and Utah, referred to "conservative" Utah's not allowing Gourmet Video to continue to do business in that state. At final argument, the prosecutor connected the "conservative" bar to Texas.