leinweber 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00565-CR







John Frederick Leinweber, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT


NO. 93-036, HONORABLE JAMES C. ONION, JUDGE PRESIDING







 A jury found appellant guilty under a two count indictment of the offenses of theft
of property of the value of $20,000 or more but less than $100,000 (Count I), and theft of
property of the value of $750 or more but less than $20,000 (Count II). See Act of May 23,
1991, 72d Leg., ch. 565, § 1, 1991 Tex. Gen. Laws 2003 (Tex. Penal Code Ann.
§ 31.03(e)(4)(A), (5)(B), since amended). The trial court assessed punishments, enhanced by a
prior felony conviction, at confinement for ninety-nine years and a fine of $10,000 (Count I), and
confinement of twenty years and a fine of $10,000 (Count II).

 Appellant asserts seven points of error. In his first two points of error, appellant
contends that the evidence is insufficient to support the convictions. In points of error three
through five, appellant urges that the charge to the jury contains fundamental errors because the
trial court failed to properly apply the law of parties as to both counts of the indictment, and the
evidence was insufficient to authorize the trial court's inclusion of a conspiracy issue in the
charge. The trial court's admission of evidence of extraneous offenses forms the basis of his sixth
point of error. In his seventh point of error, appellant argues that he was denied due process of
law because the evidence was insufficient to support the conviction under Count I. We will
overrule appellant's points of error and affirm the judgment of the trial court.

 Appellant's wife, Samantha Leinweber, was employed as office manager and
comptroller for Lockhart Motor Company when the alleged theft of the vehicles that forms the
basis of this prosecution occurred. Prior to their acquisition of the allegedly stolen vehicles,
Samantha drove an "old beat-up Cadillac" and appellant, a tree trimmer, had a "1950s" truck. 
All transactions hereinafter detailed occurred during the calendar year 1992.

 On June 30, Samantha purchased a 1992 Lincoln Towncar from her employer,
Lockhart Motor Company, for $26,468.75, and paid the entire purchase price with a check signed
by her. Samantha executed all of the papers incident to the transaction, and the application for
title was placed in her name. While appellant was not present when the actual transfer took place,
at the "approximate time of the sale," appellant told James Honneycut, an employee of Lockhart
Motor Company, that Samantha could purchase the Lincoln because "it was her money and she
could buy whatever she wanted to buy." Prior to the purchase appellant had told Honneycut that
the Lincoln Towncar was a nice car and he would not mind owning one. On visits to the
dealership appellant had also expressed a great interest in motorcycles. Appellant was observed
driving the Lincoln on at least one occasion following the purchase.

 On July 10, Samantha wrote a check to Lockhart Motor Company for $18,626.06,
the full purchase price for a 1992 Ford pickup truck. Appellant was present at the time of the
transaction and executed all of the papers incident to the purchase, including an application for
title in his name. Samantha's checks given in payment for the two vehicles were never deposited
to the account of Lockhart Motor Company nor did the company ever receive payment for them. 
The checks were never debited to appellant and Samantha's joint bank account in the Omni Bank
of Lockhart. In the scope of her employment Samantha had access to checks received by the
dealership. On occasion, she took checks to the bank for deposit and was shown to have
volunteered to make the dealership's deposits during the period of June 10 to July 15.

 Evidence established that it normally takes six to eight weeks following a sale
before the purchaser receives title to a vehicle. On August 15, appellant traded the 1992 Ford
pickup to Apple Dodge in Austin for a 1977 model pickup and $8,000 payable by check to
appellant. Appellant furnished Apple Dodge with a lien free title to the 1992 vehicle. On October
10, Samantha traded the 1992 Lincoln to Apple Dodge in Austin for a 1986 Dodge van and
$10,100 in cash. Samantha did not return to work following this transaction, which occurred on
a weekend.

 The following Tuesday, Honneycut received a call from appellant. Honneycut
stated that appellant's voice sounded "nervous, scared, afraid." Appellant told Honneycut that
Samantha had stolen "quite a bit of money and vehicles from the dealership and that he was scared
that he was involved in that -- and that he didn't know what to do." Appellant called Honneycut
on Friday and stated that he had withdrawn money from the bank that Samantha had taken from
the dealership. In subsequent calls to Honneycut on Saturday and Sunday, appellant stated that
Samantha had about $25,000 she had taken and "that they were going to Houston for one last
weekend." A call to Honneycut the following Wednesday revealed that appellant was still in
Houston and that Samantha had left with the money.


 The testimony of Barbara Gilmer, vice president of Omni Bank in Lockhart,
showed that appellant and Samantha had only the joint account, and that they individually made
frequent payments and withdrawals. Closing dates for statements in June and July showed a
$1,060.50 balance on June 10 and $251.94 balance on July 10. The highest balance for the July
statement was $1,731.12 on June 16. The highest balance for the ensuing statement period was
$874.15 on July 16.

 Lockhart Motor Company executed a check dated August 26, numbered 40568,
payable to Arnold Oil Company in the amount of $6,972.52. On the same date, Samantha
deposited to the joint account in Omni Bank a check identical as to amount, date, number, and
payor; the payee was shown to be Samantha Leinweber. In addition, three other checks drawn
on Lockhart Motor Company in the amounts of $4,291.90, $4,376.58 and $955 were deposited
to the joint account. It was shown that the original payees on all these checks had been deleted
and Samantha's name substituted therein.

 On August 27, appellant purchased a 1993 Harley-Davidson motorcycle from
Alamo City Harley-Davidson in San Antonio. Payment for the motorcycle was made with $6,200
in cash shown to have been drawn from the Omni Bank account by appellant with a check made
payable to cash on August 27 (a day after Samantha had made the $6,972.52 deposit), the $8,000
check made payable to appellant by Apple Dodge, and a $500 check used as a deposit drawn on
their joint account by Samantha two days earlier. Prior to appellant and Samantha leaving for
Houston, appellant withdrew $2,500 from their joint account.


 The standard for review of the sufficiency of the evidence is whether after
reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential element of the crime beyond a reasonable doubt. Jackson v.
Virginia, 433 U.S. 307, 319 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App.
1981). The fact finder's verdict must stand "unless it is found to be irrational or unsupported by
more than a 'mere modicum' of the evidence, with such evidence being viewed under the Jackson
light." Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The fact finder may
draw reasonable deductions from the evidence within the context of the crime. Haddad v. State,
860 S.W.2d 947, 950 (Tex. App.--Dallas 1993, pet. ref'd). A person is criminally responsible for
an offense committed by another if acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense. Tex. Penal Code Ann. § 7.02(a)(2) (West 1994). To be guilty as a party to an offense,
the accused must know that he was assisting in the commission of the offense. Amaya v. State,
733 S.W.2d 168, 174 (Tex. Crim. App. 1986). The reviewing court examines the events
occurring before, during, and after the commission of the offense to determine whether a
defendant participated as a party. Haddad, 860 S.W.2d at 950. The defendant's acts can show
an understanding and common design to commit the offense. Id.

 A defendant may be held criminally responsible even if he was not present during
the offense. See Thompson v. State, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985). Motive is
a circumstance indicating guilt. See Harris v. State, 727 S.W.2d 537, 542 (Tex. Crim. App.
1987). The fact that the defendant stood to receive financial gain from the offense is evidence of
motive. See Miranda v. State, 813 S.W.2d 724, 733 (Tex. App.--San Antonio 1991, pet. ref'd).

 The only bank account shown to have been maintained by appellant and Samantha
was their joint bank account in the Omni Bank in Lockhart. Appellant undoubtedly knew the
condition of that account since the evidence showed that he regularly made withdrawals and
deposits. The jury could reasonably infer that appellant knew that the account lacked sufficient
funds to pay the purchase price of the 1992 Lincoln Towncar when he told Honneycut that
Samantha could purchase the vehicle because "it was her money and she could buy whatever she
wanted to buy." A jury could logically find appellant's statement tantamount to a representation
that Samantha had sufficient funds to purchase the car. Appellant had earlier admired the same
model car, stated that he would not mind owning one, and was observed driving the vehicle
following its purchase. This, and ensuing events, showed that appellant enjoyed financial benefits
from substantial amounts of money. The jury could reasonably infer that appellant knew the
money had been stolen from Lockhart Motor Company. While the evidence fails to show the
exact source of appellant's $2,500 withdrawal, it appears to have been at a date following
Samantha's disposal of the Lincoln. The jury could reasonably infer that appellant had a motive
to aid and encourage Samantha in the continuing fraudulent acquisition of vehicles and funds from
Lockhart Motor Company. Prior to the acquisition of the Lincoln, appellant had exhibited great
interest in motorcycles. Samantha's theft of vehicles and funds enabled appellant to pay cash for
a motorcycle costing more than $14,000. While his statement to Honneycut that he was afraid
that he was involved in the theft of "quite a bit of money and vehicles from the dealership" did
not constitute an express and unequivocal admission of the theft of the Lincoln, it was probative
evidence of appellant's implication in its theft. Viewing the evidence in the light most favorable
to the verdict, we hold that a rational trier of fact could have found that there was sufficient
evidence to show that appellant acted as a party in the theft alleged in Count I of the indictment. 
Appellant's first point of error is overruled.

 In his second point of error, appellant urges that the evidence is insufficient to show
the theft of the Ford pickup alleged in Count II because mere presence at the time of the
transaction is insufficient to show guilt. Aside from Samantha's writing the checks, appellant
executed all of the papers incident to the transaction, including a statement that the purchase
money was not from a loan. Application for title was in his name. Less than two weeks earlier,
Samantha had written a check in excess of $26,000 for the Lincoln. The jury could have easily
inferred that appellant knew that there were not sufficient funds in the bank to cover the check for
the pickup. Given the time necessary to obtain title following purchase, appellant appears to have
liquidated the new Ford pickup for a 1977 model vehicle and $8,000 at or about the time he
received title to the new pickup. In less than two weeks, appellant had used the $8,000 proceeds
and other monies that appear to have been stolen from Lockhart Motor Company to purchase a
motorcycle for more than $14,000. Appellant's expressed fear that he was involved in the theft
of vehicles from the dealership had to include the 1992 Ford pickup. Unlike Beier v. State, 687
S.W.2d 2 (Tex. Crim. App. 1985), cited by appellant, there was evidence in the instant cause
tending to show appellant's guilt other than his physical presence at the time of the offense. 
Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact
could have found that there was sufficient evidence to support a conviction under Count II of the
indictment. Appellant's second point of error is overruled.

 In his third and fourth points of error, appellant contends that there was
fundamental error in the trial court's charge at the guilt-innocence phase of the trial because the
party theory contained in the application paragraphs of the charge was insufficient. The trial
court's charge to the jury contained an abstract instruction on the law of parties which provided:



 A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both.


 A person is criminally responsible for an offense committed by the conduct
of another if, acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit
the offense.



See Penal Code § 7.02. The application paragraphs provide in pertinent part:



 Now, bearing in mind the foregoing instructions, if you believe from the
evidence, beyond a reasonable doubt, that the Defendant, JOHN FREDERICK
LEINWEBER, either acting alone or with another as a party to the offense, as that
term has been hereinbefore defined, . . . .



 No objections were made to the trial court's charge on the basis urged on appeal. 
In Chatman v. State, 846 S.W.2d 329 (Tex. Crim. App. 1993), the court held that no fundamental
error was shown where the general application of the law of parties to the facts was sufficient to
refer the jury to the abstract instruction of the law of parties. Id. at 332. The court stated that
if a defendant desires a more explicit application of a more particular method of acting as a party,
it is his burden to request such a charge or object to the charge. Id. We hold that the general
applications of the law to the facts in the instant cause were sufficient to refer the jury to the
abstract instruction on the law of parties so the jury could properly apply the law to the facts. 
Appellant's third and fourth points of error are overruled.

 In his fifth point of error, appellant contends that the charge contains fundamental
error because there was insufficient evidence to support an instruction on conspiracy. Included
in its charge on the law of parties, the trial court instructed the jury:



 If, in the attempt to carry out a conspiracy to commit one felony, another
felony is committed by one of the conspirators, all conspirators are guilty of the
felony actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have
been anticipated as a result of the carrying out of the conspiracy.


 The term "conspiracy" means an agreement with one or more persons that
they or one or more of them engage in conduct that would constitute a felony. An
agreement constituting a conspiracy may be inferred from the acts of the parties.


The statutory definition of criminal responsibilities of a party includes the theory of criminal
conspiracy. See Penal Code § 7.02(b). The trial court's instruction did not authorize a conviction
for the separate offense of criminal conspiracy. Rather, the charge merely contained an
alternative parties charge and, as such, may be applied to a case even though no such allegation
is contained in the indictment. See Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App.
1989), cert. denied, 502 U.S. 961 (1991). Appellant's complaint on appeal, insufficient evidence
to support an instruction on criminal conspiracy, was not raised in the trial court. Thus, reversal
will result "only if the error was so egregious and created such harm" that the accused "has not
had a fair and impartial trial." See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984). We have heretofore detailed evidence from which the jury could have reasonably inferred
that appellant participated in Samantha's ongoing scheme to steal vehicles and money from
Lockhart Motor Company and enjoyed the financial benefits that came from the fraudulently
obtained funds. Assuming, arguendo, that the trial court erred by inclusion of the conspiracy
theory in its instruction on the law of parties, we hold that the complained of error was not so
egregious as to deprive appellant of a fair and impartial trial. Appellant's fifth point of error is
overruled.

 In his sixth point of error, appellant complains of the admission of extraneous
evidence showing that Samantha altered four checks drawn on Lockhart Motor Company to show
that she was the payee. Appellant urges that these extraneous offenses committed by Samantha
failed to show that appellant was engaged in a common plan or scheme to defraud Lockhart Motor
Company. See Tex. R. Crim. P. 404(b). Appellant first complains of State's exhibit 13, a check
in the amount of $6,972.59 showing Samantha Leinweber as payee. At the time that exhibit 13
was admitted in evidence, appellant voiced no objection. If it be appellant's contention that the
check's inadmissibility was not apparent at that time, no argument is advanced to support this
position. See Polk v. State, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987). Moveover, with
respect to this exhibit as well as the other altered checks that form the basis of his complaints,
appellant merely cites us to pages "323, 330, 406, 407" of the statement of facts. A careful
reading of these pages fails to show any place where his Rule 404(b) argument (urged on appeal)
was made to the trial court. The only basis appellant advances for inadmissibility on the cited
pages is "speculation." Moreover, the cited pages do not reflect a ruling by the trial court. In
Harris v. State, 827 S.W.2d 949 (Tex. Crim. App.), cert. denied, 113 S. Ct. 381 (1992), the
court held that error is not preserved for review where the complaining party "does not cite any
place in the record where his arguments were made to the trial court, or where a ruling was
obtained on such arguments." Id. at 958. Appellant's sixth point of error is overruled.

 In his seventh point of error, appellant asserts that he was denied due process under
the Fourteenth Amendment to the United States Constitution because the evidence was insufficient
to support a conviction for the theft of the Lincoln Towncar. We find that our disposition of his
first point of error is dispositive of this contention. Appellant's seventh point of error is
overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Chief Justice Carroll, Justices Aboussie and Davis*

Affirmed

Filed: August 30, 1995

Do Not Publish




* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).