TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-98-00594-CR







Paul Alba, Jr., Appellant


v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0980197, HONORABLE FRED A. MOORE, JUDGE PRESIDING







 To address concerns raised in appellant's motion for rehearing, we withdraw our
earlier opinion and judgment issued August 26, 1999, and substitute this opinion in its place.

 A jury found appellant Paul Alba, Jr. guilty of robbery. See Tex. Penal Code Ann.
§ 29.02 (West 1994) ("Penal Code"). Upon the jury's assessment of punishment, the district
court sentenced appellant to confinement in the Texas Department of Criminal Justice-Institutional
Division for seventy-five years. (1) Appellant argues on appeal that the evidence is legally
insufficient to support the jury's finding that he was a party to the robbery and that his conviction
relies on insufficiently corroborated accomplice witness testimony. See id. §§ 7.01(a), 7.02(a)(2);
Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). We will affirm the conviction.


BACKGROUND

 In November 1994, appellant, together with his then girlfriend, Merry Daye, went
to a nightclub where appellant developed a plan to rob Estalfo Vargas. By this plan, Daye was
to pretend to be a prostitute; Daye would leave with Vargas on the pretense that they were to have
sex; Daye would direct Vargas to a park; appellant would follow them to the park; and upon their
arrival, appellant would rob Vargas. Appellant, pursuant to his plan, approached Vargas and told
him that Daye was a prostitute who wanted "to party" with him. Appellant introduced Vargas
to Daye and set the price of their liaison at $50. Vargas agreed to the price and departed with
Daye in his pickup truck.

 Daye did not direct Vargas to the park, but instead directed him to appellant's
father's house where appellant, Daye, and Daye's cousin Necole Burnham were living at the time. 
Daye erroneously thought that appellant was following them. When they entered the house, Daye
discovered that Burnham's boyfriend Lewis Hunter was in the back room. Out of Vargas's
earshot, Daye told Hunter about appellant's plan, and Hunter agreed to help. According to Daye,
Hunter walked up behind Vargas and hit him in the head with a metal bar. After Vargas had been
stripped of his possessions, Daye and Hunter dumped him into a roadside ditch on an isolated
stretch of highway. 

 Daye and Hunter returned to appellant's father's house where they later met with
Burnham and appellant. Appellant, Daye, Hunter, and Burnham cleaned up the blood covering
the floor, couches, and walls of the front room where Vargas had been beaten. Hunter and
Burnham then washed out Vargas's truck at a local car wash before abandoning it, while appellant
and Daye rented a hotel room. Hunter and Burnham met up with appellant and Daye in the hotel
room, where appellant and Hunter split Vargas's cash and jewelry between themselves.

 In the early morning hours of November 18, a deputy sheriff discovered Vargas,
disoriented and covered in blood, standing in the middle of an isolated road. An ambulance took
Vargas to the hospital where he received treatment for his head injuries.

 While being questioned by police about an unrelated crime in November 1997,
Daye revealed information about the Vargas robbery. (2) Police found Burnham in jail, and she
corroborated Daye's account. Vargas picked appellant out of a photo lineup as the person who
approached him at the nightclub on the night of the robbery and picked out Daye and Hunter from
separate lineups as the persons who robbed him. Appellant was later arrested and charged by
indictment with robbery.

 The jury found appellant guilty as a party to robbery and assessed punishment. See
Penal Code §§ 29.02, 7.01(a), 7.02(a)(2). The court then sentenced appellant to seventy-five
years' confinement. On appeal, appellant challenges the sufficiency of the evidence to support
the jury's verdict.


DISCUSSION

Legal Sufficiency of the Evidence

 In his first point of error, appellant challenges the legal sufficiency of the evidence
to support the jury's finding that he was a party to robbery. See Penal Code §§ 7.01(a),
7.02(a)(2). When reviewing the legal sufficiency of the evidence to support a criminal conviction,
the critical inquiry is whether the evidence in the record could reasonably support the jury's
finding beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Griffin
v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). When reviewing the record for legal
sufficiency, this Court considers the evidence in the light most favorable to the jury's verdict. See
Jackson, 443 U.S. at 319; Griffin, 614 S.W.2d at 159. We do not judge whether the evidence
at trial established guilt beyond a reasonable doubt; rather, we determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See
Jackson, 443 U.S. at 319; Griffin, 614 S.W.2d at 159.

 A defendant is criminally responsible as a party for an offense when the offense is
committed by the conduct of another for whom the defendant is criminally responsible. See Penal
Code § 7.01(a). A person is criminally responsible for the conduct of another if, inter alia,
"acting with intent to promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense." Id. § 7.02(a)(2). 

 Circumstantial evidence alone may be sufficient to show that a person is a party to
an offense. See Scott v. State, 946 S.W.2d 166, 168 (Tex. App.--Austin 1997, pet. ref'd) (citing 
Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987)). In determining whether a
person participated in an offense as a party, we "may rely on actions of the defendant which show
an understanding and common design to commit the offense." Burdine v. State, 719 S.W.2d 309,
315 (Tex. Crim. App. 1986). A person need not be present during the commission of an offense
to be a party to that offense. See Haddad v. State, 860 S.W.2d 947, 951 (Tex. App.--Dallas 1993,
pet. ref'd). (3) One can encourage the commission of an offense by having an agreement with the
perpetrator to commit the offense prior to or contemporaneous with its commission. See Cordova
v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). "It is not necessary to prove that two
defendants came together and actually agreed in terms to have" such an agreement. Burow v.
State, 210 S.W. 805, 808 (Tex. Crim. App. 1919). Rather, "[i]f it be proved that defendants by
their acts pursued the same objects . . . one performing one part and another another part of the
same, so as to complete it with a view to the attainment of the same object, the jury will be
justified in the conclusion that they were engaged in a conspiracy to effect that object." Id. We
may infer a person's participation in an offense or encouragement of another to commit an offense
from proof of the circumstances existing before, during, and after the offense. See Haddad, 860
S.W.2d at 951 (citing Beardsley, 738 S.W.2d at 684, and Jefferson v. State, 26 S.W.2d 1064,
1066 (Tex. Crim. App. 1930) (on mot. for reh'g)). A person should not be able to escape
criminal responsibility for a completed crime by insulating himself from the actual perpetrator of
the offense. See Scott v. State, 754 S.W.2d 268, 275 (Tex. App.--Corpus Christi 1988, pet.
ref'd).

 In the instant case, the evidence reflects that on the day of the robbery appellant
expressed his intent to rob someone to both Burnham and Daye. While at the nightclub, he told
Daye that he intended to rob Vargas in particular and detailed his plan to do so. Appellant
convinced Daye to pretend to be a prostitute and directed her to lure Vargas away from the
nightclub. Appellant then approached Vargas and initiated conversation with him, introduced him
to Daye, and set the price of their liaison. When appellant's plan began to fall apart because Daye
took Vargas to appellant's father's house, Hunter successfully completed the robbery after
learning of appellant's plan from Daye. Appellant later helped cover up the crime and accepted
half of the spoils from the robbery.

 Viewing this evidence in the light most favorable to the jury's verdict, a rational
person could have concluded that appellant and Daye shared an understanding and common design
to rob Vargas. See Burdine, 719 S.W.2d at 315. One might also conclude from evidence of the
circumstances existing before, during, and after the robbery that an agreement existed between
appellant and Daye whereby they both pursued a common object, appellant performing one part
and Daye another part of the same plan. See Burow, 210 S.W. at 808; Haddad, 860 S.W.2d at
951. A reasonable person, therefore, could conclude that appellant was a party to the robbery
because, acting with intent to promote or assist the robbery, he encouraged Daye to commit the
offense, which she concluded by enlisting the help of Hunter. See Penal Code § 7.02(a)(2);
Cordova, 698 S.W.2d at 111.

 Appellant urges that he must have knowingly aided or encouraged Hunter in
committing the offense to be held criminally liable as a party for that offense, and that proof of
his direct contact with the perpetrator of the crime is required by section 7.02(a)(2) to prove this
culpable mental state. See Penal Code § 7.02(a)(2). Under section 7.02(a)(2) of the Penal Code,
a person's intent to promote or assist the commission of the offense charged is the only culpable
mental state required and there is no mention of any requirement of direct contact or
communication. (4) See Penal Code §§ 7.02(a)(2), 6.02(b). Cases interpreting section 7.02(a)(2)
do not require that a person knowingly aid or encourage another to commit the offense, or even
have direct contact with that person, to be criminally responsible for his or her conduct. See
Duff-Smith v. State, 685 S.W.2d 26, 33-35 (Tex. Crim. App. 1985) (upholding conviction of man
for murdering his mother for remuneration where person he solicited to kill his mother enlisted
aid of another person who, in turn, hired man that actually strangled her); Scott, 754 S.W.2d at
275 (upholding conviction of woman found guilty for the murder of her husband where she
solicited person to kill her husband and that person sought aid of another person who actually
pulled trigger). In both Duff-Smith and Scott, the person convicted as a party to murder had no
direct contact or communication with the person that actually committed the murder and did not
knowingly encourage that particular person to kill the victim; however, evidence linked the party
and the perpetrator through a "chain of responsibility." See Duff-Smith, 685 S.W.2d at 33-35;
Scott, 754 S.W.2d at 275-76.

 Because a rational trier of fact could find that appellant, through his conduct, aided
Daye to rob Vargas, and Daye, with the same intent, solicited Hunter to commit this offense,
appellant is likewise responsible for the ultimate crime committed. See Scott, 754 S.W.2d at 275-76. Thus, we find appellant's argument to be without merit.

 Appellant's first point of error is overruled.


Sufficient Corroboration of Accomplice Witness Testimony 

 Appellant argues by his second point of error that Daye's testimony was
insufficiently corroborated by non-accomplice testimony to support the jury's verdict. The law
regarding the corroboration of accomplice testimony is stated in article 38.14 of the Code of
Criminal Procedure:


A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the
commission of the offense.



Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). To test for sufficient corroboration of
accomplice testimony, the court should eliminate from consideration the accomplice testimony and
examine the remaining inculpatory evidence to determine if it tends to connect the appellant with
the offense. See McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). The
non-accomplice evidence does not have to establish appellant's guilt beyond a reasonable doubt
or directly link appellant to the crime. See Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim.
App. 1999). There must simply be some non-accomplice evidence that tends to connect appellant
to the offense charged. See id. Non-accomplice evidence proving that the defendant was with
the accomplice near the time of the offense coupled with other suspicious circumstances may be
sufficient corroborating evidence; however, there is no precise rule as to the amount of evidence
required to corroborate accomplice witness testimony. See Gill v. State, 873 S.W.2d 45, 49 (Tex.
Crim. App. 1994). The sufficiency of the corroborative evidence must be judged in light of the
particular facts and circumstances of each case. See id. at 48. If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, article 38.14 is satisfied. See
Cathey, 992 S.W.2d at 462. (5) 

 Burnham testified that hours before the robbery occurred, appellant revealed his
intention to rob someone that night and solicited her help in a robbery scheme that involved using
her and Daye to lure a man away from a nightclub. She also testified that appellant helped clean
up the crime scene after the robbery, and that he and Hunter shared the spoils from the robbery. 
Vargas testified that appellant approached him at the nightclub and introduced Daye as a
prostitute, and that Daye directed him to a house where she helped Hunter rob him. According
to Burnham, Daye was actually appellant's girlfriend at the time and not a prostitute, and the
house where the robbery took place was appellant's father's house where appellant, Daye, and
Burnham were living at the time. This non-accomplice evidence tends to connect appellant to the
robbery and sufficiently corroborates Daye's testimony. 

 Therefore, appellant's second point of error is overruled.


CONCLUSION

 We conclude that the evidence in the record is legally sufficient to convict appellant
as a party to robbery and that the non-accomplice evidence sufficiently corroborates the
accomplice witness testimony. Accordingly, we affirm the judgment of conviction.



 

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: September 23, 1999

Do Not Publish
1. Appellant's punishment was enhanced by two prior felony convictions.
2. The police uncovered few leads through their investigation of this robbery. They considered
the case unsolved for over three years and did not uncover significant information to help solve
the case until Daye's confession.
3. See also Isom v. State, 132 S.W.2d 121, 122 (Tex. Crim. App. 1939).
4. To be liable as a party for an offense, a person must also voluntarily engage in conduct. 
See Penal Code § 6.01(a); Alvarado v. State, 704 S.W.2d 36, 38 (Tex. Crim. App. 1985).
5. Appellant argues that when considering whether the non-accomplice testimony tends to
connect appellant to the robbery the court should weigh the evidence as it does when addressing
a point of error challenging the factual sufficiency of the evidence. In Cathey, however, the court
of criminal appeals held that legal and factual sufficiency standards do not apply when reviewing
accomplice testimony under article 38.14. See Cathey, 992 S.W.2d at 462. "The accomplice
witness rule is a statutorily imposed sufficiency review and is not derived from federal or state
constitutional principles that define the legal and factual sufficiency standards. The burden
established by the Legislature is that there be other evidence tending to connect the defendant with
the offense." Id. at 462-63 (footnotes omitted). 



have to establish appellant's guilt beyond a reasonable doubt
or directly link appellant to the crime. See Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim.
App. 1999). There must simply be some non-accomplice evidence that tends to connect appellant
to the offense charged. See id. Non-accomplice evidence proving that the defendant was with
the accomplice near the time of the offense coupled with other suspicious circumstances may be
sufficient corroborating evidence; however, there is no precise rule as to the amount of evidence
required to corroborate accomplice witness testimony. See Gill v. State, 873 S.W.2d 45, 49 (Tex.
Crim. App. 1994). The sufficiency of the corroborative evidence must be judged in light of the
particular facts and circumstances of each case. See id. at 48. If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, article 38.14 is satisfied. See
Cathey, 992 S.W.2d at 462. (5) 

 Burnham testified that hours before the robbery occurred, appellant revealed his
intention to rob someone that night and solicited her help in a robbery scheme that involved using
her and Daye to lure a man away from a nightclub. She also testified that appellant helped clean
up the crime scene after the robbery, and that he and Hunter shared the spoils from the robbery. 
Vargas testified that appellant approached him at the nightclub and introduced Daye as a
prostitute, and that Daye dire