**Opinion issued December 17, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-18-00876-CR**

_____

**DERRICK BERNARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1550370**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Derrick Bernard, of capital murder, and the trial

court assessed punishment at confinement for life. In four issues on appeal, appellant

contends that the trial court erred by (1) denying his motion to suppress evidence

that was obtained after his warrantless arrest;  (2) admitting statements that appellant made after allegedly asserting a right to counsel; (3) denying a requested instruction for the jury to disregard a crime scene technician's testimony about footprint evidence; and (4) violating appellant's due process rights by admitting his statement, which the State had allegedly agreed not to introduce.  We affirm.

## BACKGROUND

The complainant, Lloyd Trim, an alleged drug dealer, borrowed appellant's black Infiniti car. In return, Trim gave appellant drugs and the use of his own car. When the two men also swapped car keys, Trim's apartment key was on the keychain he gave to appellant.  When Trim and his girlfriend, Jasmaine Gonzales, later discovered that money was missing from their apartment, they believed that appellant had used the house key to enter the apartment and steal the money.  Trim texted and called appellant, demanding that he return the money.  Trim and Gonzales later drove to appellant's trailer to find him, but left without speaking to him.

Gonzales testified that she and Trim then went home and went to bed.  In the early morning hours, they awoke to the sound of their front door being kicked in. Gonzales testified that she ran into the closet and Trim ran into the bathroom. Gonzales recognized appellant's voice, and she heard him demanding that Trim return his car keys.  She then heard several gunshots.  Trim was shot twice in the head and died. Appellant located Gonzales in the closet and shot her several times

2

also. In her call to 911, Gonzales identified appellant as the shooter and described the car he was driving as a black, two-door Infiniti.

When police arrived, they discovered Gonzales outside the apartment. She was injured, but able to identify appellant as the shooter. Based on the information from Gonzales, police sought a search warrant for Trim's residence. The warrant they received had the wrong address, so several officers waited outside his residence for a corrected warrant.

Meanwhile, at the scene of the murder, appellant returned to the apartment complex and tried to pass through the crime scene tape. He was stopped by an officer who had not yet seen the photograph of appellant that the police had obtained based on Gonzales's information. Appellant again left the scene of the crime, but officers were soon able to obtain the license plate number for his car based on the information obtained from Gonzales.

Police officers, who now had a photograph of appellant and knew his license plate number, spotted appellant driving the black Infiniti approximately five hours after the murder. They stopped him and made a warrantless arrest based on the information given them by Gonzales.

Appellant was taken to the police station, where he was read his statutory rights. After waiving his rights, appellant spoke with police. At one point during the conversation, appellant stated, "I ain't got nothing to say. If y'all trying to say I

3

got something to do with it, nothing else to say, man." He asked if he could go home, and the officers told him "no" because he was being charged. The officers, without any further questions, got up to leave the interrogation room, and appellant indicated that he would like to talk further. Appellant never admitted to the murder, but he did say that he had gone over to Trim's apartment to get his keys and car.

## MOTION TO SUPPRESS

In his first issue, appellant contends that "[t]he police failed to obtain a warrant when they arrested [appellant] and thus his arrest and his resulting custodial statement should have been suppressed." The State responds that there was a valid, warrantless arrest based upon probable cause.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, and we review the trial court's application of the law to the facts de novo. *Id.* We give deference to the trial court's factual determinations because the trial court is the sole trier of fact and the sole judge of witness credibility and the weight to be given testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382

4

S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). If the trial court fails to make a particular finding, we imply a fact finding to support the trial court's ruling when the evidence supports the implied finding. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). We afford the prevailing party the "strongest legitimate view of the evidence" and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013) (quoting *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011)). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

*Analysis*

Appellant argues that the trial court erred in denying his motion to suppress evidence stemming from his arrest because the arrest was made without a warrant or probable cause. The State admits that it did not have a warrant but contends that the officers made a proper warrantless arrest based on probable cause.

5

Under the United States Constitution, police officers may arrest a suspect without a warrant if they have probable cause. *United States v. Watson*, 423 U.S. 411, 423–24 (1976). In Texas, however, an officer may make a warrantless arrest only if the officer has probable cause with respect to the person being arrested and has statutory authority to make the arrest. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008).

Here, appellant argues only that there was no probable cause to support the warrantless arrest.[1] We disagree. Probable cause exists when the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997); *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). Probable cause deals with probabilities; it requires more than mere suspicion, but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Guzman*, 955 S.W.2d at 87. "The rule of probable cause seeks to accommodate the sometimes-opposing interests of safeguarding citizens from rash

---

[1] Appellant does not argue or provide authority in his brief that the statutory exceptions to the warrant requirement in Article 14 of the Texas Code of Criminal Procedure are not applicable. *See generally* TEX. CODE CRIM. PROC. Chap. 14. Thus, any issue relating the applicability of a warrant exception is waived. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record").

6

and unreasonable police conduct and giving fair leeway to legitimate law enforcement efforts." *Id.* Police broadcasts that are based on probable cause and that report a felony and a description of the perpetrator satisfy the requirements for a warrantless arrest. *Law v. State*, 574 S.W.2d 82, 84 (Tex. Crim. App. 1978).

Here, the arresting officers had information that an eyewitness at the scene of the murder had identified appellant as the assailant, thus they had probable cause to support a warrantless arrest. *See Livingston v. State*, 739 S.W.2d 311, 328 (Tex. Crim. App. 1987) (holding that warrantless arrest of suspect was supported by probable cause in form of eyewitness identification of suspect as assailant at scene).

Because police had probable cause, and because appellant does not challenge or brief the applicability of any warrant exception, we overrule issue one.

## RIGHT TO COUNSEL

In his second issue, appellant contends that he "clearly asked for an attorney and was ignored," and that, as a result, his statement that he was with the deceased on the day of the murder should not have been admitted.[2] The State argues that (1)

---

[2]  Appellant is relying on the right to counsel provided for in the Fifth Amendment. "[T]he Fifth Amendment right to interrogation counsel is triggered by the *Miranda* warnings that police must give before beginning any custodial questioning. The Sixth Amendment right to trial counsel is triggered by judicial arraignment or Article 15.17 magistration." *Pecina v. State*, 361 S.W.3d 68, 71 (Tex. Crim. App. 2012). "Among the rights about which the police must advise a suspect whom they have arrested is the right to have counsel present during any police-initiated interrogation." *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). Once a suspect has invoked his Fifth Amendment right to counsel, police interrogation must cease until counsel has

appellant's objection at trial does not comport with his issue on appeal and (2) while appellant may have invoked his right to remain silent, he never invoked his right to counsel. We agree with both contentions.

## *Background*

At one point during questioning by police, appellant said, "I ain't got nothing to say. If y'all trying to say I got something to do with it, nothing else to say, man." The officers then told appellant that they could not ask him any more questions if he did not want to talk. Appellant asked if he was going to be released. An officer told him that he was not going to be released; he was going to be charged. The officers got up to leave the room, and appellant indicated that he wanted to talk further. During the interview, appellant admitted being with the complainant but insisted that the complainant was alive when he left.

## *Error Preservation*

For an issue to be preserved for appeal, there must be a timely objection that specifically states the legal basis for the objection. TEX. R. APP. P. 33.1(a); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). A general or imprecise objection will not preserve error for appeal unless "the legal basis for the objection is obvious to the court and to the opposing counsel." *Vasquez v. State*, 483 S.W.3d

---

been provided or the suspect himself reinitiates a dialogue. *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).

550, 554 (Tex. Crim. App. 2016) (quoting *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) (emphasis in original)). When a complaint on appeal differs from that made at trial, the error is waived. *Cook v. State*, 858 S.W.2d 467, 474 (Tex. Crim. App. 1993). "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Rezac*, 782 S.W.2d at 870. "Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).

> In this case, appellant's trial counsel stated:

> Your Honor, in the statement, [appellant] invokes his right to remain silent and when he does that, the investigator said, made the overture, Brother I'm just trying to help you out . . . it wasn't a voluntary statement in the sense that he had . . . invoked his right and then he went back on that because he felt the pressure of, oh, my gosh, when I exercise my rights, I'm going to get thrown in prison and called a suspect and charged with capital murder.

> Counsel, however, never argued to the trial court that appellant had invoked

his right to counsel, and, as a result, the trial court did not have the opportunity to rule on that basis. Because appellant's argument on appeal does not comport with

his trial objection, appellant has failed to preserve error. *See Larkins v. State*, No. 13-16-00356-CR, 2018 WL 5074584, at \*2 (Tex. App.—Corpus Christi Oct. 18, 2018, no pet.) (holding that "right-to-counsel" trial objection did not preserve error for "right-to-remain-silent" issue on appeal).

### *Invoking Right to Counsel*

The State also argues that appellant's statement—"I ain't got nothing to say. If y'all trying to say I got something to do with it, nothing else to say, man"—was insufficient to invoke his right to counsel.

The right to counsel is invoked when a suspect indicates that he wants to talk to an attorney or to have an attorney present during questioning. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966); *Ochoa v. State*, 573 S.W.2d 796, 800 (Tex. Crim. App. 1978). However, if a suspect makes an ambiguous or equivocal statement with respect to his desire for an attorney, interrogating officers are not required to stop the interview. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). The use of the word "attorney" or "lawyer" does not, in and of itself, invoke the right to counsel. *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). The issue as to whether a suspect has clearly and effectively invoked his right to counsel is determined by a consideration of the statement itself and the totality of the circumstances that surround the interrogation. *Gobert*, 275 S.W.3d at 892; *Dinkins*, 894 S.W.2d at 351. The test is

an objective one, and a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. U.S.*, 512 U.S. 452, 459 (1994).

At no point during questioning did appellant express a desire to talk to an attorney; rather, he merely stated that he had "nothing else to say." His statement does not constitute even an equivocal request for counsel. *See, e.g.*, *Davis*, 512 U.S. at 462 (holding that defendant's statement, "Maybe I should talk to a lawyer," was not request for counsel); *Davis v. State*, 313 S.W.3d 317, 338–41 (Tex. Crim. App. 2010) (holding that defendant's statement during police interview, "I should have an attorney," did not expressly invoke right to counsel under circumstances presented); *Beham v. State*, 476 S.W.3d 724, 728-31 (Tex. App.—Texarkana 2015, no pet.) (holding that defendant's statement "I was gonna try to see if I could get a lawyer" did not invoke right to counsel); *Hartwell v. State*, 476 S.W.3d 523, 529–32 (Tex. App.—Corpus Christi 2015, pet. ref'd) (holding that defendant's question, "Should I maybe call my attorney friend and see what he thinks," was not unequivocal and unambiguous request for counsel); *Williams v. State*, 402 S.W.3d 425, 434 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (holding that defendant's question, "Do I need a lawyer present for this," was equivocal request for counsel); *Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2004, no

pet.)(holding that defendant's question, "Can I have [my attorney] present now?" constituted ambiguous request); *Halbrook v. State*, 31 S.W.3d 301, 302 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding that statement, "Do I get an opportunity to have my attorney present?" did not constitute clear and unambiguous invocation of counsel); *Flores v. State*, 30 S.W.3d 29, 34 (Tex. App.—San Antonio 2000, pet. ref'd) (holding that question, "Will you allow me to speak to my attorney before?" was not clear and unequivocal invocation of right to counsel).

Because appellant neither preserved error nor invoked his right to counsel, we overrule issue two.

### FOOTPRINT EVIDENCE

In issue three, appellant contends that the trial court erred in not granting his request for an instruction to the jury to disregard a crime scene technician's testimony that the tread on appellant's shoe "matched" a shoe print found on the door of the Trim's home. Specifically, appellant argues that the instruction was required because the crime scene technician was not an "expert" on footprint evidence.

The Court of Criminal Appeals has held as follows:

This type of testimony has long been admissible, in Texas and elsewhere, by either lay or expert witnesses. Decades ago, we noted that shoe print comparison testimony is generally admissible:

[T]he unbroken line of decisions of this state, and every other state with which we are familiar, hold . . . that a

12

> witness who has made measurements of the tracks, and the foot or shoe of the defendant, or who has made some such comparison between the tracks and the shoes of the defendant, as placing the shoe in the tracks, or who has detailed peculiarities in the tracks on the ground which correspond with the shoes, or with the proven or admitted tracks of the defendant, that in either of these cases or instances the witness may give his opinion as to the similarity of the tracks.
>
> * * * *
>
> The reason this kind of testimony is liberally allowed is that the field of tire and shoe comparisons is not particularly complex, the witness's opinions are not conclusive, and consequently, they are generally not pivotal to the resolution of the case.

*Rodgers v. State*, 205 S.W.3d 525, 532–33 (Tex. Crim. App. 2006). Because the exhibits relied on by the expert were admitted into evidence and available to the jury in its deliberations, and the jury could make its own comparisons, there was no error in permitting the witness to testified as to shoe print comparisons. *Id.* at 533.

The same is true in this case. The crime scene technician took an imprint of appellant's Nike shoe (State's Exhibit 149), compared it with the print on the door of the complainant's apartment (State's Exhibit 55), and concluded that the treads "matched." The technician admitted that she could not tell whether the same shoe made both marks but testified that the treads looked the same. State's Exhibits 55 and 149 were both admitted into evidence so that the jury could make its own comparison. Because here, as under *Rodgers*, the shoe tread testimony was

13

admissible, the trial court did not err in failing to instruct the jury to disregard it. *See id.*

We overrule issue three.

## VIOLATION OF EVIDENTIARY AGREEMENT

In issue four, appellant contends that he was denied due process based on prosecutorial misconduct because the trial court allowed the State to introduce his statement in violation of an alleged evidentiary agreement not to do so.

### *Applicable Law and Standard of Review*

The Texas Court of Criminal Appeals has reversed cases for improper prosecutorial conduct when (1) the defendant objected to the prosecutor's misconduct, (2) the prosecutor's actions deliberately violated an express court order, and (3) the prosecutor's misconduct was so blatant as to border on being contumacious. *Stahl v. State*, 749 S.W.2d 826, 831 (Tex. Crim. App. 1988); *Haddad v. State*, 860 S.W.2d 947, 954 (Tex. App.—Dallas 1993, pet. ref'd). We examine each claim of prosecutorial misconduct on a case-by-case basis. *Stahl*, 749 S.W.2d at 830; *Haddad*, 860 S.W.2d at 953. A trial court's rulings on the conduct of counsel during trial will be reversed only if an abuse of discretion or resulting injury is shown. *Williams v. State*, 220 S.W.2d 663, 664 (Tex. Crim. App. 1949) (op. on reh'g).

14

*Analysis*

Before trial, the State notified appellant, in writing, that it intended to introduce his statement into evidence. During the jury trial, the following exchange took place between the trial court and the prosecutor:

> [Trial Court]: For the record, it is my understanding the State does not intend to offer the defendant's statement at this time. Am I correct?
>
> [Prosecutor]: That's correct, Your Honor.

Later in the trial, the State decided that it wished to offer appellant's statement, and appellant's counsel objected, stating,

> I believe it amounts to prosecutorial misconduct would be my objection. You can't advise the Court you're not going to use a piece of evidence in front of defense counsel and cause them to present a defense that ultimately, if you turn around and use—allow them use that piece of evidence, discredits the attorney, then that's problematic for the defense.

The trial court overruled appellant's objection, stating,

> I'm not going to find that the prosecutors have engaged in any kind of prosecutorial misconduct. As I think we know in every case, as things begin, witnesses testify, both defense lawyers and prosecutors change their strategies. I don't—so based on, I guess, what is—you doing an incredible job as the defense lawyer in this matter has changed—has caused the State to change courses in midstream. All right.

As seen from the discussion above, there was no agreement between appellant and the State that the State would not seek to admit appellant's statement. At best, there was a representation from the State to the trial judge, in defense counsel's presence, that it did not intend to offer appellant's statement "at this time." That the

15

State later decided to admit the defendant's statement does not render its earlier representation—that it didn't seek admission "at this time"—untrue. There being no misrepresentation by the State, there is no prosecutorial misconduct, and the trial court did not abuse its discretion by permitting the State to introduce the statement.

We overrule issue four.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).